Argued May 21, affirmed June 23, reconsideration denied
July 30, petition for review denied August 6, 1975

## STATE OF OREGON, *Respondent, v.* RICHARD EUGENE GRABER (No. 44036), *Appellant.*

### 537 P2d 117

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

## LANGTRY, J.

■ Defendant appeals from conviction of burglary in the first degree. ORS 164.225. At trial, defendant was implicated by evidence as an accomplice in the burglary of a home of acquaintances of his in Albany, Oregon. Some 13 guns, ammunition and other articles were taken from a firearms collection belonging to an occupant of the burglarized house. The defendant contends that the court erred in allowing into evidence 10 guns and accompanying articles which were identified by their owner as being part of the property taken in the burglary and also that there was insufficient evidence to warrant submitting the case to the jury. With reference to the latter contention our reading of the transcript discloses that there was a plethora of direct and circumstantial evidence implicating defendant in the crime.

The principal contention made is with reference to the court's receiving into evidence the firearms and other accompanying articles. The basis of the claim is that the court suppressed admissions made by the defendant to police officers after his arrest and that the officers obtained information from the defendant with those admissions which led them to finding the articles in a cache under bushes in the Portland area. Defendant contends they should not have been received in evidence. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966) ; *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

The motion to suppress the admissions came after the trial was about one-half completed and much evidence had been taken in the presence of the jury. By waiting until after the trial had started to move to suppress instead of moving before trial as is contemplated by ORS 135.037, the defendant precluded the state from taking an appeal from the court's ruling if the state thought the same to be erroneous.[1]

---

[1] *See* discussion in State v. Hoare, 20 Or App 439, 532 P2d 240 (1975). The ground upon which the court sustained the motion to suppress the admissions was that the state had not maintained its burden of proof. The court ruled:

"I find that the State has not sustained the burden of proof in regard to the admissibility of the confession and that it should not be admitted as a question of fact. I base it primarily on the right to attorney advice, that when the matter of the right to an attorney was discussed and mentioned, that the proceedings nevertheless continued and there's no showing that there was any waiver of the right to counsel even though the defendant might have been advised of it."

On the morning of June 14 defendant had been thoroughly apprised of his rights by a magistrate who had also specifically told him not to talk about the case with anyone but his own counsel. Defendant acknowledged that he understood. In the afternoon of the same day two police officers and a parole officer talked with him. One officer reminded defendant of his rights and defendant indicated that he understood them. The same officer in cross-examination at the in camera voluntariness hearing testified that he did not remember the defendant's requesting an attorney or indicating that he did not want to talk further with the officer. The parole officer testified in cross-examination that "[t]he question of an attorney did come up someplace in the conversation and at which time I think it was Officer Martin who indicated that he could have an attorney, and other than that, I'm pretty foggy * * *." Then he was asked:

"Q Do you remember someone advising Graber that or saying that he could have an attorney and him replying that he couldn't afford one, and then somebody saying something about that fact that 'Well, the Court hasn't appointed you an attorney yet'?

"A No, sir."

This is all the evidence there is in the transcript about "right to attorney" advice. The defendant did not put on any evidence.

Under the cited statute "any party" can make a pretrial motion for an omnibus hearing. Thus, both the state and the defendant did not avail themselves of the opportunity the statute affords to avoid the type of procedure suggested in *State v. Brewton,* 238 Or 590, 603, 395 P2d 874 (1964), which was decided before the statute was enacted.

The in camera hearing was after the time the owner of the firearms as a witness had identified them as exhibits in the case and had discussed in detail their characteristics. In this testimony he stated that the recovered articles were shown to him by the police. He testified that the defendant had no ownership in them, but that the defendant had previously tried to buy one of the guns from him. Defense counsel not only did not make any objection to this extensive identification of and testimony about the firearms, but he also extensively cross-examined and recross-examined with reference to it.

After the motion to suppress was heard in camera and ruled upon, in the course of examining a police officer before the jury, the prosecutor elicited from him that the officer proceeded to Portland after the conversation he had had with the defendant, that he went to a place where the articles were concealed, that he found the recovered articles there, that he recognized the bulk of them as firearms that had been taken in the burglary, that there was a distinctive two-toned

---

The evidence upon which the court ruled that the state had not carried its burden of proof thus appears questionable.

"* * * [A]fter the warnings are given and knowingly and understandingly understood by the suspect, the burden is upon the suspect to invoke his known rights." State v. Ruiz, 251 Or 193, 195, 444 P2d 32 (1968).

*See also,* discussion in State v. Blackford, 16 Or App 217, 517 P2d 1196 (1974). However, there is no need to rule upon this question in view of our determination in text.

blue T-shirt cached with them, that they were in a bag bearing defendant's brother's name and that he put identification marks on all of them. The prosecutor then offered them in evidence and for the first time defense counsel objected. No request was made to have the jury disregard the extensive foregoing testimony about the recovered articles, and no objection was ever made to it.[2]

■ The objection made came too late for the court to exclude the proffered evidence even if its ruling with reference to suppression of the admissions was

---

[2]
"If the administration of the exclusionary rules of evidence is to be fair and workable the judge must be informed promptly of contentions that evidence should be rejected, and the reasons therefor. The initiative is placed on the party, not on the judge. The general approach, accordingly, is that a failure to object to an offer of evidence at the time the offer is made, assigning the grounds, is a waiver upon appeal of any ground of complaint against its admission * * *.

"* * * [C]ounsel * * * must object to the admission of evidence as soon as the ground for objection becomes apparent. Usually, in the taking of testimony of a witness an objection is apparent as soon as the question is asked, since the question is likely to indicate that it calls for inadmissible evidence. Then counsel must, if opportunity affords, state his objection before the witness answers. But sometimes an objection before an answer to a question is not feasible. * * * [A]fter the evidence is received, a ground of objection to the evidence may be disclosed for the first time in the later course of the trial. In all these cases, an 'after-objection' may be stated as soon as the ground appears. The proper technique, for such an objection is to phrase a motion to strike out the objectionable evidence, and to request an instruction to the jury to disregard the evidence. Counsel should use the term 'motion to strike', as just indicated, but it seems that any phraseology which directs the judge's attention to the grounds as soon as they appear, and asserts the objection, should be sufficient." (Footnotes omitted.) McCormick, Evidence 113-14, § 52 (hornbook series, 2d ed 1972).

See also Wallace v. American Toll Bridge Co., 124 Or 179, 264 P 351 (1928).

correct (a question we do not reach). The wide range of plainly admissible evidence about the recovered articles which had been heard by the jury over the major part of the trial was so intermixed with that which may not have been admissible under the court's ruling in the in camera hearing that there was no possibility of separating it. Waiting as the defendant did far beyond the time contemplated by the procedural statutes for making a suppression motion is a tactic more calculated to hurt than to help the defense.

In arriving at this conclusion we avoid the constitutional question which the conduct of defendant's case waived. This is the issue raised in the specially concurring opinion which, we fear, seeks to rush too quickly to raise and discuss a questionable constitutional issue when the matter can be resolved on procedural nonconstitutional grounds.

Affirmed.

SCHWAB, C. J., specially concurring.

Although I agree with the result reached by the majority opinion, I am concerned that it may create confusion about the proper procedures to be followed in determining the admissibility of evidence alleged to have been obtained in violation of a constitutional limitation.

The principal constitutional limitations on the admissibility of evidence in criminal cases are the search-and-seizure rules of the Fourth Amendment and the Self-Incrimination Clause of the Fifth Amendment. The Fourth Amendment rules only relate to the admissibility of *physical* evidence. The Fifth Amendment rules only relate to the admissibility of *oral* evidence, such as a defendant's confession or admission. The procedures to determine the admissibility of physical evidence and oral evidence are different.

It is a long-standing Oregon rule that objections based on the Fourth Amendment to the admissibility of physical evidence must be made by the defendant by way of a pretrial motion to suppress. This rule is now codified in ORS 133.673.

The leading Oregon case on the procedures to determine Fifth Amendment challenges to the admissibility of oral evidence is *State v. Brewton,* 238 Or 590, 603, 395 P2d 874 (1964):

> "If the state elects * * * to offer a confession in evidence, it should so advise the court *in camera.* The court in the absence of the jury should then hear all the evidence relevant to the voluntariness of the confession. The burden will rest on the state to prove to the satisfaction of the court that the confession was voluntary. If the court finds that the confession was voluntary, it shall note its finding in the record and admit the confession in advance * * *."

Summarizing, in a Fourth-Amendment-physical-evidence context an objection must be made by the *defendant,* and made *before* trial; by contrast, in a Fifth-Amendment-oral-evidence context the burden of raising the question of admissibility is on the *state,* and the question can be raised *during* trial.

The majority, I fear, blurs these distinctions by referring to defendant's motion to suppress his admissions and suggesting such a motion should have been made before trial. Similar confusion is lurking in ORS 135.037, relied upon by the majority, which provides:

> "* * * * *
>
> "(2) The purpose of an [pretrial] omnibus hearing shall be to rule on all pretrial motions and requests, including but not limited to the following issues:
>
> "* * * * *

"(c) Challenges to the voluntariness of admissions or confessions."

It would certainly be anomalous to conclude that this statute is a legislative modification of the *Brewton* rule, which was based on constitutional considerations. *See,* 238 Or at 599. I would avoid that anomaly by reading ORS 135.037(2)(c) as purely permissive—either the state or defendant *may* raise questions about the admissibility of oral evidence before trial, but *Brewton* continues to stand for the proposition that there is no requirement that such questions *must be* raised before trial.

The facts of this case are something of a hybrid, presenting interrelated Fourth and Fifth Amendment issues. Defendant's contention that the guns were inadmissible is an objection to admissibility of physical evidence, but it is grounded on the further contention that this physical evidence was discovered because of improperly obtained oral evidence. While there is some room to argue it either way, I think this situation is more akin to a "pure" Fourth Amendment question which must be raised pretrial than to a "pure" Fifth Amendment question that can be raised at trial. Therefore, I would hold that defendant's objection to the admissibility of the guns, made for the first time during trial, was made too late. I would not hold, as the majority apparently does, that defendant's objection to the admissibility of his statements to the police was made too late because *Brewton* tells me: (1) it is the state, not the defendant, that must raise the question of the admissibility of oral evidence; and (2) the state may do so for the first time during trial.