Argued and submitted June 24, reversed and remanded September 21, reconsideration denied November 25, 1983, petition for review denied January 17, 1984 (296 Or 350)

## STATE OF OREGON,
*Respondent,*

*v.*

## VERNON OTIS TEAFATILLER, II,
*Appellant.*

(D2-0272; CA A27108)

669 P2d 379

Thomas M. Christ, Certified Law Student, Public Defender Services of Lane County, Inc., Eugene, argued the cause for appellant. With him on the brief was Rush M. Hoag and Robert J. Larson, Public Defender Services of Lane County, Inc., Eugene.

Margaret E. Rabin, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals his conviction for the unlawful possession of a deer, ORS 498.002, a misdemeanor. ORS 496.992. The issue is whether it was error to deny a motion to suppress defendant's inculpatory statements made without the benefit of *Miranda* warnings. After denying the motion, the trial court found defendant guilty on stipulated facts. We reverse.

On June 12, 1982, two officers went to defendant's home to investigate a report that defendant had shot a deer out of season. He was not home. The officers talked to defendant's father, Orville, who permitted the officers to search the premises. They found what appeared to be blood and deer hair and collected several samples. They also seized packages of what they concluded to be frozen venison. Orville then admitted that his son had brought home a deer "within the last two weeks." One officer told Orville that, because his son had killed a deer, "he would probably just cite the son."

The following day, the officers returned to defendant's home. They questioned him, and he admitted killing the deer out of season and directed the officers to a field where parts of a deer carcass were buried. At the conclusion of the questioning he was issued a citation. He was never advised of his *Miranda* rights.

The officers testified that, had defendant not talked with them, he would have been immediately cited.[1] Both

---

[1] Trooper Violette testified:

"[Defense]: If he had refused to cooperate would you have issued the citation?

"[Witness]: That decision would have been made by the senior man present, which would have been Sergeant Waldrop. But in my own mind I feel, yes, he would have been cited, with the information, and the evidence, that we had."

"[Defense]: This is prior to questioning?

"[Witness]: Yes."

Sergeant Waldrop testified:

"[Defense]: Had he refused to cooperate or respond to your questions, would you have issued a citation?

"[Witness]: Would we have issued a citation?

"[Defense]: Uh-huh.

"[Witness]: Probably we would have, yes."

officers testified that, had defendant tried to leave the scene of questioning before the citation had been issued, he would have been detained.[2] After hearing the testimony, the trial court found that defendant "was cited, not taken into custody" and that defendant was not "significantly restrained of liberty by police officers."

In *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), the United States Supreme Court held that a specific warning is required when a defendant is subjected to a "custodial interrogation," defined as "* * * questioning initiated by law enforcement officials after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way * * *." 384 US at 444. The statements at issue were elicited in response to police questioning; therefore interrogation took place. *State ex rel Juv. Dept. v. Killitz,* 59 Or App 720, 651 P2d 1382 (1982). The issue is whether the interrogation was "custodial."

*State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), outlined a three part test to be used in determining whether an interrogation is custodial under *Miranda:*

(1) "Whether the defendant could have left the scene of the interrogation voluntarily;

(2) "Whether the defendant was questioned by the police as a suspect or merely as a witness;

(3) "Whether a defendant freely and voluntarily accompanied police to the place of his questioning." 31 Or App at 860.

Considering the first factor, both officers testified that, if defendant had attempted to leave prior to the issuance of the citation, he would have been detained. Both officers were in uniform and armed. Defendant knew that the officers were there specifically to question him concerning the unlawful possession of a deer. According to the officers, defendant was not

---

[2] Sergeant Waldrop testified:

"[Defense]: If as you began questioning him he attempted to depart the premises would you have detained him?

"[Witness]: Probably I would have."

To the same question, Trooper Violette testified that he "probably would have" detained defendant.

free to leave, nor would a reasonable person in these circumstances believe that he was free to leave.

The state argues that the officers' intention to cite rather than arrest is pertinent to whether defendant was in custody.[3] The pertinent inquiry is whether defendant was free to leave during the questioning, not whether he was free to leave after he had incriminated himself and had been cited. Defendant could not have left the scene of the interrogation voluntarily.

We turn to the second *Paz* factor whether defendant was questioned as a suspect or a witness. He had been implicated the night before by his father. The officers then had so much evidence against defendant that they told his father that defendant would "probably" be cited. Finally, the officers testified that, if defendant had not talked with them, they would have immediately cited him. The record supports no other conclusion than that defendant was questioned from the start as a suspect.

The third *Paz* factor is whether defendant voluntarily accompanied the officers to the scene of the interrogation. The state argues that the home environment is "inherently non-custodial." The fact that the interview took place at defendant's home is not dispositive. *See State v. Wolfe,* 295 Or 567, 669 P2d 320 (1983).

Under the *Paz* tests, defendant was subjected to custodial interrogation from the moment the officers began questioning him. *Miranda* warnings should have been given before beginning the questioning. It was error to deny the motion to suppress.

The final question is whether the error was harmless. On this record, we cannot say that the error was harmless beyond a reasonable doubt. *See State v. Naylor,* 291 Or 191, 196, 629 P2d 1308 (1981).

Reversed and remanded for a new trial.

---

[3] ORS 496.650 provides:

"Should any person making an arrest mentioned in ORS 496.645 for the violation of the wildlife laws desire not to forthwith take the person arrested before the justice of the peace or judge having jurisdiction of the offense or desire not to immediately take the arrested person into custody, the person making the arrest may issue a citation to the person arrested."