Argued and submitted March 18; resubmitted In Banc August 3,
affirmed December 14, 1983

# STATE OF OREGON,
*Respondent,*

*v.*

# BRADLEY THOMAS SHERMAN,
*Appellant.*

(81-29109; CA A26331)

672 P2d 1370

H. Thomas Evans, Eugene, argued the cause for appellant. With him on the brief were Meredith Conant, and Evans & Armstrong, Eugene.

Terry R. Leggert, Special Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

VAN HOOMISSEN, J.

Gillette, J., specially concurring.

Newman, J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his jury conviction for leaving the scene of an accident, ORS 483.604.[1] He contends that the trial court erred in admitting evidence of statements he made to a police officer. The issue is whether defendant was in custody for *Miranda* purposes at the time he was questioned by the officer. The trial court concluded that he was *not* in custody. We agree and affirm.

About midnight on December 5, 1981, Dennis Mitchell was leaving the residence of a friend when he heard a crash and the sound of breaking glass. He saw a truck that had collided with a parked vehicle leaving the area. He followed it and was able to obtain its license number. He then reported the incident to the police. Later, Mitchell showed Deputy Hudson the damaged property and gave him the license number of the truck. He told Hudson that he believed more than one person was in the truck.

Using the license number, Hudson obtained the name and address of the truck's registered owner. He then drove to that address, where he observed a truck in the driveway and noted that it was damaged. He matched pieces found at the accident scene with damaged parts of the truck.

Hudson then knocked on the residence door. Defendant's father answered. When Hudson informed him that his truck had reportedly been in an accident earlier that evening, defendant's father stated that defendant had "had the truck tonight." Hudson asked to speak to defendant. Defendant, age 17, was summoned by his parents, who told him that an officer was waiting to speak with him. Defendant met Hudson in the hallway. His parents were nearby. Hudson asked him if he had been driving the truck in the driveway earlier that evening and

---

[1] ORS 483.604 provides in relevant part:

"(1) The driver of any vehicle which collides with any vehicle which is unattended immediately shall stop and:

"(a) Locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle; or

"(b) Leave in a conspicuous place in the vehicle struck a written notice giving the name and address of the driver and of the owner of the vehicle doing the striking and a statement of the circumstances thereof.

"* * * * *

if he had been in an accident. Defendant admitted driving the truck, being in the accident and that he had failed to comply with the requirements of ORS 483.604. Hudson then cited him for violation of ORS 483.604.

At trial, defendant objected to the admission of his statements to Deputy Hudson on *Miranda* grounds. The trial court found that defendant was not "in custody" for *Miranda* purposes when he made the statements and that they were admissible.[2]

Defendant first contends that the trial court erred in admitting evidence of his statements to Hudson. *Miranda* warnings are required whenever a person is subjected to custodial interrogation. If an officer has decided to arrest, the interrogation is custodial and warnings are required. *State v. Roberti,* 293 Or 59, 644 P2d 1104, 293 Or 236, 646 P2d 1341 (1982).[3] However, if the officer has not decided to arrest, the

---

[2] The trial court stated:

"I find the statements admissible. First I find that they were voluntary under the circumstances and that Mr. Sherman's will is not overborne by anything in the totality of the circumstances or by what the police officer said. As regards the *Miranda* aspect, the gist of the *Roberti* decision is briefly this: first of all, the *Roberti* decision does not do away with the requirement that a person must either be under arrest or under some type of equivalent custodial-type restraint at the time of the alleged questioning. What the *Roberti* decision says in effect is it applies a common sense rule. *Roberti* says that once a police officer has made up his mind he's going to arrest the defendant, it is clear that the defendant is in a custodial-type restraint because anybody can figure out the police officer is not going to let him go. And so you are going to have to figure out from the totality of the circumstances whether prior to the conversation involved, it can reasonably be said that the officer pretty well had made up his mind that he was going to arrest the defendant. And I find that that * * * wasn't the case here. On that basis I hold the statements to be admissible."

Defendant contends that the trial court's finding regarding whether Hudson intended to arrest him was "inaudible." He argues that, if the court found that Hudson intended to arrest him, *Miranda* warnings were required, and if the court found that Hudson did not intend to arrest him, then the evidence does not support that finding. We conclude that the trial court found that Hudson had *not* decided to arrest defendant prior to questioning him. That finding is consistent with the court's conclusion that defendant's statements were admissible. Even if the record were unclear on the point, we would presume that the facts were decided in a manner consistent with the ultimate conclusion reached by the court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

[3] In *Roberti,* the circumstances surrounding the officer's contact with the defendant *and the officer's decision to arrest* triggered the requirement for *Miranda* warnings. Those circumstances were:

"* * * [Defendant] had been signaled to stop his vehicle by the officer's emergency light, and if he had not obeyed that signal he would have been guilty of

following factors are relevant in determining whether a person is "in custody" for *Miranda* purposes: whether the person (1) was free to leave, (2) was being questioned as a suspect or as a witness, and (3) freely and voluntarily accompanied the officer to the place of questioning. *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

■ ■ Hudson testified that he did not intend to arrest defendant, and the trial court so found.[4] That conclusion is supported by the evidence. Hudson's intention not to arrest, however, is not dispositive. We must determine whether defendant was nonetheless deprived of his freedom of action in a significant manner. If he was, he was "in custody" for *Miranda* purposes. *State v. Roberti, supra.* Defendant was at home and in the presence of his parents. Although he contends that he felt obligated to answer Hudson's questions, that is not controlling. In *Oregon v. Mathiason,* 429 US 492, 495, 97 S Ct 711, 5 L Ed 2d 714 (1977), the Supreme Court said:

> "* * * Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. * * *"

We find that defendant was not deprived of his freedom of action in a significant manner. As to the second *Paz* factor, we conclude that defendant was being questioned as a suspect.

---

the crime of fleeing or attempting to elude a police officer. He was performing a variety of tests at the behest of the officer. * * *" (Footnote omitted.) 293 Or at 90.

The Supreme Court found that

> "* * * a reasonable person in the same circumstances would have believed he was not free to leave, and this defendant was, *in fact,* not free to leave by reason of the officer's decision to prevent defendant's leaving. * * *" 293 Or at 90-1.

[4] On cross-examination, Hudson testified:

> "[Defense Counsel]: Based on what the other people told you and the father told you, would the defendant have just been free to leave at anytime?

> "HUDSON: Well, the question was never brought up. It was his house, I guess he could have gone anywhere he wanted. I would have to say, yes, he was."

The third *Paz* factor, whether defendant voluntarily accompanied Hudson to the place of questioning, does not appear relevant here. We conclude that defendant was not "in custody" for *Miranda* purposes.

Defendant relies on *State ex rel Juv. Dept. v. Killitz,* 59 Or App 720, 651 P2d 1382 (1982). *Killitz* is distinguishable. There, the juvenile defendant who was summoned to the principal's office did not know that an officer was waiting there to question him. Here, defendant, who was at home, was informed by his parents that an officer was waiting to question him in their presence. In *Killitz,* the defendant could have been subjected to school disciplinary procedures for refusing to go to the principal's office. Here, there is no evidence that defendant would have suffered any adverse consequences for refusing to speak to Deputy Hudson.

Affirmed.

**GILLETTE, J.,** specially concurring.

I join in the majority's disposition of this case, but on a different basis: I believe that the defendant's argument should not be considered on procedural grounds. Because the motion to suppress defendant's statement was not made until mid-trial, I would hold that it came too late.

ORS 135.037 (made applicable to district court proceedings by ORS 46.800) provides for "omnibus hearings" prior to trial aimed at determining, among other things, whether evidence should be suppressed and whether certain admissions and confessions are voluntary. It is the device by which motions to suppress statements such as the one involved in this case are made.

ORS 133.673(1) (made applicable to district court proceedings by ORS 46.800) is also helpful, albeit only in a negative sense. It provides:

> "(1)  Objections to use in evidence of things seized in violation of any of the provisions of ORS 133.525 to 133.703 shall be made by a motion to suppress which shall be heard and determined by any department of the trial court in advance of trial."

The reference within this statute to other provisions of ORS ch 133 is a reference to physical items; it is not a reference to

evidence of confessions or admissions. There is no analogous statutory provisions which does refer to confessions or admissions. It follows that, as a matter of *statutory* interpretation, no objection to the admissibility of confessions or admissions is required by statute to be made prior to trial. A question remains, however: is there some other source for a rule, analogous to the "raise or waive" rule in ORS 133.673(1), that requires that defendant make the motion he made in this case *pretrial*?

I believe the answer is yes. ORS 46.280 provides:

"A district court may make and enforce all rules necessary for the prompt and orderly dispatch of the business of the court and not inconsistent with applicable rules made or orders issued by the Chief Justice of the Supreme Court or the presiding judge of the district court. If a majority of the judges of a court having two or more judges do not agree in respect to the making of rules under this section, the decision of the presiding judge shall control."

Pursuant to ORS 46.280, the Lane County District Court has promulgated rules, including two, Rules 5.2 and 5.3, which bear on the issue in this case. Those rules respectively provide:

**"Rule 5.2. Motions to Suppress or Controvert**

"(1) Motions to suppress evidence or to controvert search warrant affidavits shall be filed within the time required for motions for pretrial and omnibus hearings under rule 5.3.

"(2) Motions to suppress or to controvert must be accompanied by an affidavit or affidavits on behalf of the defendant setting forth all facts within his knowledge upon which he intends to rely in support of the motion. The motion shall make specific reference to any constitutional provision, statute, rule, case or other authority upon which it is based and shall be accompanied by the moving party's brief which shall be adequate reasonably to apprise the court and the adverse party of the facts, arguments and authorities relied upon. Any opposition to a motion to suppress together with any opposing affidavits upon which it is based shall be in writing and shall be served and filed not more than 7 days after the motion to suppress has been filed. The opposition shall give the grounds thereof and, if the relief or order requested is not opposed, wholly or in part, a specific statement of the extent to which it is not opposed. Any opposition shall make specific reference to any affidavits relied on and

shall be accompanied by an opposition brief adequate reasonably to apprise the court and moving parties of the arguments and authorities relied upon.

## "Rule 5.3 Pretrial or Omnibus Hearings

"(1)   All requests for pretrial or omnibus hearings shall be filed in writing not later than three weeks before trial date, provided that when the trial notice is received three weeks or less before the trial date, the motion shall be filed within three court days after receipt of the trial notice.

"(2)   Such motions shall state

"(a)   With particularity the matters sought to be admitted or excluded, or other remedy desired;

"(b)   The amount of time required for the hearings; and

"(c)   Whether or not any ruling at the hearing may be dispositive of the case, 'dispositive' meaning that a ruling may result in dismissal, change of plea or other disposition short of trial.

"(3)   All pretrial or omnibus hearings shall be set before the trial day unless otherwise ordered by the court."

I read the reference in Rule 5.2 to motions to suppress "evidence" as referring to *all* evidence, including evidence of confessions and admissions. If its meaning were intended to be narrower, I believe the Lane County District Court would have used the more limiting language of ORS 133.673(1), "evidence of things seized." Under Rules 5.2 and 5.3, defendant's objection to the admissibility of his statement was not timely. The trial court therefore should not have even considered it.

The fact that the court did consider it means defendant got one more crack than he should have at the motion. I would not give him another. I would affirm the trial court on that basis, without reaching the merits.

**NEWMAN, J.,** dissenting.

The issue is whether at the time the officer questioned defendant about the accident defendant was "in custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 Or 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The majority concludes that defendant was not "in custody." I disagree.

The majority acknowledges that the court's finding that Hudson had not decided to arrest defendant at the time he questioned him does not end the inquiry.[1] Three factors are relevant to whether a person is in custody or otherwise significantly deprived of his freedom: (1) whether he was questioned as a suspect or a witness; and (2) whether he was free to leave; and (3) whether he voluntarily accompanied the police to the scene of the interrogation. *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

Defendant was questioned as a suspect and not just as a witness. Officer Hudson already had the license number of the suspect vehicle and the name and address of its registered owner, defendant's father. He had also observed the vehicle itself at defendant's home and had seen that it was damaged and that the damage matched the damage at the scene of the accident. Furthermore, defendant's father had told Hudson that defendant had the vehicle out that evening.

Defendant, furthermore, was not free to leave. On cross examination, Hudson testified:

"EVANS: Based on what the other people told you and the father told you, would the defendant have just been free to leave at anytime?

"HUDSON: Well, the question was never brought up. It was his house, I guess he could have gone anywhere he wanted. I would have to say, yes, he was."

This statement simply belies the realities of the situation. The trial court did *not* find that defendant was free to leave. It only ruled that Hudson had not yet made up his mind that he was going to arrest defendant. Defendant's parents awakened him from sleep. They told him that a police officer was waiting to question him. Defendant met the officer in the hallway. The deputy was armed and in full uniform and did not advise defendant that he was free to leave. Given the circumstances, and what Hudson then knew, it defies reason to state that defendant was free to leave. As *State v. Roberti,* 293 Or 59, 90, 644 P2d 1104, 293 Or 236, 646 P2d 1341 (1982), states:

---

[1]Hudson was asked if he was "prepared to issue him a citation or arrest him," and he answered that he was not so prepared at the time he questioned him about the accident.

"It defies common sense to suggest that in those circumstances a reasonable person would believe anything other than that he was not free to leave."

Contrary to the majority's view, the third aspect of the *Paz* test, whether defendant voluntarily accompanied Hudson to the place of questioning, is also relevant. Defendant was awakened from sleep to meet the police officer in the hallway of his home in the middle of the night. Defendant did *not* voluntarily attend the place of questioning. *See State v. Wolfe,* 295 Or 567, 669 P2d 320, and *State v. Teafatiller,* 64 Or App 612, 669 P2d 379, in which the defendants were held to be in custody although they were questioned in their homes.

In *State ex rel Juv. Dept. v. Killitz,* 59 Or App 720, 651 P2d 1382 (1982), we held that the defendant, a juvenile, was "in custody" and suppressed his incriminatory statements made to a police officer in the school principal's office after the defendant was summoned to the office during regular school hours, although he was not arrested until after a second interrogation the next day. The majority attempts to distinguish *Killitz,* on the grounds that the juvenile (1) did not know that a police officer was waiting to question him in the principal's office and (2) would have been subject to disciplinary procedures if he did not go to the office as summoned. The majority's points lack substance. Defendant's parents here, as did the school principal in *Killitz,* assisted the officer in bringing defendant to the place of questioning when they awakened him from sleep in the middle of the night to meet the police officer in the hallway. As in *Killitz,* defendant was not informed that he was free to leave and, in fact, was not free to leave. Although the defendant in *Killitz* was obliged to respond to the principal's order to come to his office, he was no more subject to adverse consequences if he refused to speak to the officer than was defendant here. Yet we held in *Killitz* that the defendant was in custody for purposes of *Miranda,* and his statements to the officer were suppressed.

Although *Killitz* followed *State v. Roberti, supra, Killitz* held that the defendant was in custody under the *Paz* analysis: (1) he was questioned as a suspect rather than as a witness and (2) he was not free to leave, and (3) he did not come voluntarily to the place of questioning. In *Killitz* this court stated:

"* * * Nothing in *Roberti* casts doubt on the applicability of the *Paz* factors, where evidence of the police officer's state of mind does not aid the custody determination. Here, although another student had implicated defendant in a burglary, the record does not indicate that the officer had decided before interrogating defendant to take him into formal custody." 59 Or App at 723 n 1.

All that Hudson did not know with certainty when he questioned defendant was whether he was the driver at the time of the accident. The majority would have us hold that, even though Hudson had narrowed the investigation to the point that only one critical question remained to be asked: "Were you driving —. in other words, did you commit the crime?", defendant needed not be warned. I disagree. Under the test articulated in *Paz,* defendant was "in custody or otherwise deprived of his freedom in a significant manner" at the time he was questioned. He was questioned as a suspect, was not free to leave and did not attend the interrogation voluntarily. Because he was not given *Miranda* warnings, defendant's objection to the district attorney's question to Hudson should have been sustained.[2]

Joseph, C. J., and Warden, J., join in this dissenting opinion.

---

[2]The defendant could make the objection for the first time at trial. *See* ORS 135.037, ORS 133.673(1), ORS 46.800; *see also* concurring opinion of Schwab, C.J., in *State v. Graber,* 21 Or App 765, 537 P2d 117, *rev den* (1975). Furthermore, apart from a question whether the local court rules could bar defendant's *Miranda* objection, they do not, by their terms, bar it.