Argued and submitted August 20, 1986, reversed and remanded for new trial
February 11, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# TIMOTHY PAUL GLENN,
*Appellant.*

(313134; CA A39555)

732 P2d 946

David W. Heynderickx, Portland, argued the cause for appellant. With him on the brief was Shepherd, Heynderickx & Miller, Portland.

Jeff Ellis, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmeyer, Attorney General, Virginia Linder, Solicitor General, and Terry Ann Leggert, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN J.

Defendant appeals his conviction for unlawful possession of a weapon. ORS 166.150.[1] He assigns as error that the court denied his motion to suppress evidence, including the gun which is the basis of the charge for which he was convicted. We reverse.

On January 24, 1986, at 10:00 p.m., officer Ragland saw defendant's van near an area in which he had been investigating a prowler call. Ragland, who testified that he was "mainly just curious" about defendant's presence in the neighborhood, ordered him to pull his van over to the side of the road and stop. Ragland saw defendant lean over "as though putting something or getting something out from under the seat" and immediately ordered him to get out of the van. Ragland asked defendant what he was doing in the area. Defendant responded that he was supposed to pick up someone but had become lost. The state concedes that Ragland's stop of defendant was illegal, because the officer did not have reasonable suspicion that defendant had committed a crime. ORS 131.615.

Officer Renna arrived at the scene. Ragland asked defendant why he had leaned over after the stop. Defendant explained that he was trying to pick up credit cards that he had dropped as he pulled his driver's license from his wallet. Without defendant's consent, Renna then searched the front seat of the van. He found credit cards in defendant's name and a "stun gun" between the front seats. Renna then patted defendant down. He found a switch blade, handcuffs, a flashlight and a baton. He locked defendant in the back of the police car. Renna asked defendant if he could make a second search of the inside of the van. Defendant replied, "I guess." The state concedes that the conduct of the officers "up until defendant consented to the [second] search of his van" was illegal.

Both officers then conducted a search and removed a locked briefcase from the van. They placed it on the hood of

---

[1] Defendant was also convicted of carrying a loaded firearm. Portland City Code Ordinance (PCC) 14.21.010. The court merged that conviction into the conviction for unlawful possession of a weapon.

the police car. Without giving *Miranda* warnings to defendant, they asked him what was in the briefcase. He replied that it contained some cash and a gun. The officers asked defendant if they could open the brief case. Defendant offered to open it for them, but they declined. Defendant then gave them the first two numbers of a three number combination, but he refused to give the third number to them. The officers again locked defendant in the back seat of the police car and, by trial and error, discovered the third number. The officers found the gun in the briefcase.

Although the court ruled that the stop was illegal, it also ruled that defendant had voluntarily consented to the search of his briefcase. Defendant does not argue here, although he did below, that he did not consent to the search of the briefcase but argues that his consent was not voluntary.[2]

We are not bound by a trial court's finding of voluntariness. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). "The proper test for voluntariness is to examine the totality of the facts and circumstances to see whether the consent was given by defendant's free will or was the result of coercion, express or implied." *State v. Wolfe,* 295 Or 567, 572, 669 P2d 382 (1983). The state has the burden to establish voluntariness by clear and convincing evidence. *State v. Kennedy,* 290 Or 493, 624 P2d 99 (1981). The burden on the state to prove voluntariness is greater when a defendant gives consent after the police have made an illegal stop. *State v. Kennedy, supra,* 290 Or at 502.

In *Kennedy,* the court held that, although the defendant had been illegally stopped, he had voluntarily consented to a search of his luggage. There, as the defendant proceeded toward an airport parking lot, two plainclothes police officers approached him, and one of them said, "Excuse me, sir. May I talk to you?" The officers identified themselves and told the defendant that they suspected that he was carrying narcotics. He denied it and immediately said, "Would you like to search

---

[2] The state focuses on whether defendant's consent to search the van a second time was voluntary. Defendant focuses on whether his consent to search the briefcase was voluntary. The trial court found that defendant voluntarily consented to the search of his briefcase. It made no finding with respect to the second search of the van. Defendant's consent to the second search is a factor bearing on whether he voluntarily consented to the search of his briefcase.

my luggage." The police searched his handbag and found a vial containing cocaine residue. In concluding that the defendant's consent was voluntary, the court emphasized the noncoercive nature of the encounter, including that the conversation between the defendant and police was limited and polite, that the defendant volunteered his consent and that, because the vial contained only residue, he probably believed that no incriminating evidence would be found.

In *State v. Hageman,* 59 Or App 96, 650 P2d 175 (1982), we held that the defendant's consent, also given after an illegal stop, was involuntary. There, unlike in *Kennedy,* the totality of the circumstances indicated a coercive atmosphere:

> "[Defendant's vehicle] was stopped in the early morning hours. Within minutes of pulling into a store parking lot, [it] was surrounded by three marked police cars, three uniformed officers, one unmarked car and a plainclothes officer. Defendant and his companion were separated and questioned by different officers. The officer could not recall what questions he initially asked defendant. After a period, he asked defendant if he could search the knapsack.
>
> "* * * * *
>
> "We find in the instant case * * * that the totality of the circumstances indicate a coercive atmosphere. In so finding, we emphasize that our scrutiny of the consent is more severe than that exercised below because of our determination that the consent followed an illegal stop." 59 Or App 102.

■ Here, the totality of the circumstances indicate a coercive atmosphere. Before defendant consented to the search of his briefcase, the police had stopped him illegally, had ordered him out of his vehicle with his hands raised, had subjected him to illegal searches of his person and his van and had locked him in the back of a police car. Unlike the defendant in *Kennedy,* defendant did not volunteer his consent to search the briefcase, but gave permission to open it only after the police had, without first giving *Miranda* warnings, asked him what was in it and for permission to search it. Defendant's refusal to give the police the third number of the briefcase combination also indicates that his consent was not freely and voluntarily given.

The state acknowledges that, in determining whether defendant's consent was voluntary, we should also consider

"the temporal proximity of the illegal action by the police and the subsequent evidence, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct." *State v. Wolfe, supra,* 295 Or at 572. The state concedes that the illegal police conduct extended up to the time that defendant consented to the second search of the van. Defendant's reluctant consent to search his briefcase followed the illegal police conduct without a material time interval or significant intervening circumstances. He gave his consent to the second search of his van and his statement regarding the contents of his briefcase in the same coercive atmosphere that existed when he consented to the search of the briefcase. Those events are not sufficient intervening circumstances to render his consent to search the briefcase voluntary.

■■ The state's argument that all of the officers' actions after the illegal stop were reasonable responses to their concern for their own safety does not change the result. As we stated in *State v. Messer,* 71 Or App 506, 510, 692 P2d 713 (1984), because the stop was illegal, "[t]hat concern gave [them] no greater authority than any other person would have had." *See also State v. Wolfe, supra.* We hold that, based on the totality of the circumstances,[3] the state has failed to carry its burden to prove that defendant's consent to the search of the briefcase was voluntary.

Reversed and remanded for a new trial.

---

[3] The state also argues that, even if the consent to search the briefcase was involuntary, the officers had probable cause to search it and seize the gun, because defendant told them that the briefcase contained a gun. It asserts that the warrantless search of the briefcase was justified under the "automobile exception" of *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986). Even if *Brown* and *Bennett* could otherwise have justified the warrantless search of the briefcase, the state's argument overlooks that the officers obtained defendant's statement concerning the contents of the briefcase as a direct result of their exploitation of their illegal conduct. *See Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).