Argued and submitted January 29, 1988, affirmed February 8, 1989

## STATE OF OREGON,
*Appellant,*

*v.*

## FELICIA D. LEDBETTER,
*Respondent.*

(C86-08-34172; CA A43125)

768 P2d 431

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Sally Avera, Deputy Public Defender, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant was indicted for possession of a controlled substance. ORS 475.992(4). The state appeals from an order granting defendant's motion to suppress evidence obtained as a result of a police search of a box found in her purse.[1] ORS 138.060(3). We affirm.

On April 3, 1986, a Portland police officer on mounted patrol duty near Southwest Fourth and Taylor in downtown Portland saw defendant stop her car alongside the curb and open a door on the driver's side to let a passenger out into the traffic lane. To avoid the passenger, the driver of an approaching vehicle abruptly applied his brakes. The officer rode his horse over to defendant's vehicle. He asked defendant if she had a driver's license. She said that she did not. He dismounted and spoke to her through the passenger door while she remained in the driver's seat. It was dusk; defendant remained seated in her car. Only the officer was present with defendant, and there was heavy pedestrian traffic nearby. The officer asked to see her identification. Defendant opened her purse. The officer saw in plain view a hunting knife in a sheath in the purse. He seized the knife and told defendant that he was charging her with carrying a concealed weapon.

Without giving defendant *Miranda* warnings, the officer then asked her if she had any other weapons or drugs in her purse. She said that she did not. He asked if he could look through her purse. She said that he could. The officer found a small gold box in the purse. He asked what was in it. Defendant replied that it was her mirror. The officer asked if he could look inside the box. Defendant said that he could. At the suppression hearing, defense counsel asked defendant why she let the officer look in the box. Defendant answered:

> "I didn't feel I had any choice. I feel he would have done it anyway."

The officer found two small bags in the box, one of which, a subsequent test revealed, contained methamphetamine.

Defendant argues that the state failed to demonstrate

---

[1] The record discloses that the court orally dismissed the state's case for want of prosecution, but it does not contain a judgment of dismissal. The parties do not treat the case as having been dismissed, and neither do we.

by clear and convincing evidence that her consent to the search of the box was voluntary. The state argues that it met its burden to show voluntariness because, it asserts, the officer made no threats of force, made no promises and did no coercive acts.

Under both the Fourth Amendment and Article I, section 9, of the Oregon Constitution, a consent to search will support a warrantless search if, by clear and convincing evidence, the totality of the facts and circumstances show that consent was given by defendant's free will and not as a result of coercion, express or implied. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1983); *State v. Gaither,* 76 Or App 201, 204, 708 P2d 646 (1985). Although the "totality of circumstances" approach "is to be applied in testing consents given after illegal police conduct as well as in testing consents given where police conduct has been proper, the burden on the police to show voluntariness when consent occurs after illegal conduct is greater than when no illegality has occurred." *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981); *see also State v. Glenn,* 83 Or App 650, 653, 732 P2d 946 (1987); *State v. Smith,* 73 Or App 287, 293, 298 P2d 973 (1985). Moreover, courts will suppress evidence discovered by a consent search if the police obtain the defendant's consent by "exploitation of the illegality or [if] defendant's free will [is] tainted by the illegal police conduct." 290 Or at 501.

The trial judge stated:

"I'm going to grant the motion to suppress. The search of the gold box, or the box, I cannot find by any stretch of the imagination to be reasonably related to the purpose of the custody. I think it was overly intrusive under all of the circumstances in this case. I am going to grant the motion to suppress."

The suppression order states:

"After hearing the statements of respective counsel and receiving the testimony on behalf of both parties, and being fully advised in the premises, the court FINDS that consent was not freely, knowingly and voluntarily given."

The court's ruling that defendant's consent to the search of the box was not "free, knowing or voluntary * * * under all the circumstances" is not a finding of historical fact. It is a legal conclusion and, therefore, does not bind us. *State v. Warner,*

284 Or 147, 158, 585 P2d 681 (1978). We must determine if the totality of the facts and circumstances show that defendant gave her consent to the search freely, knowingly and voluntarily and not as a result of coercion, express or implied.

■     The officer lawfully stopped defendant for a traffic violation committed in his presence. ORS 811.490. He then lawfully asked for identification. ORS 807.570(4). He then observed, in plain view, from a place in which he had a right to be, a concealed weapon in defendant's purse. After seizing the weapon, he told defendant that he was charging her with carrying a concealed weapon. At that point, a reasonable person in defendant's situation would have understood herself "to be in custody or under restraints comparable to those associated with a formal arrest." *State v. Hackworth,* 69 Or App 358, 362, 685 P2d 480 (1984). Whether or not defendant was entitled to warnings under Article I, section 12, of the Oregon Constitution, before the officer could interrogate her, she was entitled to *Miranda* warnings under the Fifth Amendment. *Berkemer v. McCarty,* 468 US 420, 440, 104 S Ct 3138, 82 L Ed 2d 317 (1984).[2]

■■     Without giving defendant warnings, the officer asked if she had other weapons or drugs in her purse.[3] That question constituted interrogation, because he should have known that the question was "reasonably likely to solicit an incriminating response from the subject." *State v. Barmon,* 67 Or App 369, 377, 679 P2d 888, *rev den* 297 Or 227 (1984), *quoting State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982); *Rhode Island v. Innis,* 446 US 291, 301, 100 S Ct 1682, 64 L Ed 2d 297 (1980). While searching the purse with defendant's consent, he did not see any other weapons or drugs, but found the box. Again without giving warnings, the officer asked her what was in the box. That question also constituted interrogation. Furthermore, at least one of the questions did not relate at all to

---

[2] We do not decide whether defendant was also entitled to warnings under Article I, section 12, of the Oregon Constitution. *See State v. Magee,* 304 Or 261, 744 P2d 250 (1987).

[3] The state argues that the officer did not have to give defendant *Miranda* warnings, because she was subject to arrest for a misdemeanor offense and the officer had the option to issue her a citation rather than take her into "custody." The obligation to give *Miranda* warnings applies to misdemeanors. *See Berkemer v. McCarty, supra,* 468 US at 433; *see also State v. Teafatiller,* 64 Or App 612, 616, 669 P2d 379 (1983), *rev den* 296 Or 350 (1984).

the arrest for carrying a concealed weapon, and the officer had no independent basis for suspecting that the box might contain drugs, other than that the neighborhood was known to him as a "high vice area." As the trial court stated, the "search of the gold box, or the box, I cannot find by any stretch of the imagination to be reasonably related to the purpose of the custody." The state, therefore, had a greater burden to show that defendant's consent to search was voluntary. *State v. Kennedy, supra; State v. Smith, supra.*

The ultimate question is whether, under the totality of the facts and circumstances, defendant voluntarily gave her consent to search the box. The officer's failures to give defendant *Miranda* warnings or to inform her of her right to refuse consent does not require that the court suppress the evidence obtained in the search, but it is a factor in determining voluntariness. *State v. Gaither, supra,* 76 Or App at 204. Moreover, at least one of the officer's questions did not relate at all to the arrest for carrying a concealed weapon and lacked an independent basis. All of the circumstances existed just before he asked defendant if he could search the box. Defendant testified at trial that she felt that she had "no choice" but to consent. Apparently, the trial court believed defendant's testimony. On this record, and in the light of the burden on the state, the court could properly find that the police conduct tainted defendant's free will and that her consent was not voluntary.

Affirmed.