Argued and submitted July 26, reversed and remanded for new trial
September 27, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL LEE COURSON,
*Appellant.*

(88-184; CA A49377)

779 P2d 628

J. Kevin Hunt, Oregon City, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the court's denial of his motion to suppress evidence seized in a warrantless search of his vehicle and person following a vehicle stop. We reverse.

Defendant was stopped by Officer Ottele, who was in uniform in a marked patrol car. The patrol car's overhead lights were flashing. Ottele was acting on the order of Chief Roth, who had told him to stop defendant's truck because defendant might be transporting drugs or drug paraphernalia. Because the state concedes that the stop was made without reasonable suspicion, we need not discuss the basis of that order.

After Ottele stopped the car, he asked for identification from defendant and Starboard, defendant's passenger. He took defendant's driver's license. At about that time, Roth arrived, out of uniform, in an unmarked car. Ottele ordered defendant and Starboard out of the vehicle, and Roth took a holstered knife from defendant's belt. Roth told defendant that he had information that he might be carrying illegal drugs and asked for permission to search the truck. Defendant responded that Roth could search the truck and denied that it belonged to him. Either immediately before or immediately after that request, one of the officers asked defendant to stand at the rear of the truck while it was being searched. Defendant stood with his hands on the truck bed throughout the search. Ottele searched for about five minutes, finding only an open container of alcohol, for which no citation was issued. He apparently did not tell defendant that it was found. Roth then learned that there was a warrant for Starboard's arrest. He and Ottele arrested Starboard, handcuffed him and patted him down. Roth placed him in Ottele's patrol car.

Ottele asked defendant what he had in his pockets. Defendant responded by emptying his right shirt pocket into the truck bed, revealing a closed cloth pouch. Ottele asked defendant what was in the pouch. Defendant replied that he did not know but that Ottele could look in it if he wanted to. Ottele found two small, clear plastic packets containing substances later identified as methamphetamine and marijuana. He asked defendant if he had anything else in his pockets.

Defendant replied that he did not know, but that Ottele could look. He found a razor blade in defendant's pocket.

██ ██    The issue is whether defendant's consent to search was valid so that the evidence seized is admissible despite the illegal stop. When consent to search is given after illegal police conduct, the evidence obtained will be suppressed if "it is found that the consent was gained by exploitation of the illegality or that defendant's free will was tainted by the illegal police conduct." *State v. Kennedy,* 290 Or 493, 501, 624 P2d 99 (1981). "To determine if a defendant's consent to search was valid, the totality of the facts and circumstances must be examined to ascertain whether the consent was a product of the defendant's free will or was the result of coercion, express or implied." *State v. Hageman,* 59 Or App 96, 101, 650 P2d 175 (1982). The state has the burden to establish the voluntariness of a consent to search by clear and convincing evidence. The burden is greater when consent is given after illegal police conduct than when no illegality has occurred. *State v. Kennedy, supra,* 290 Or at 502.

The court made no findings of fact, but stated at the hearing that *Kennedy* controlled and that the evidence did not demonstrate that any exploitation or coercion was involved. We are not bound by the court's ruling, however, if the historical facts are insufficient to support it. *State v. Ledbetter,* 95 Or App 187, 768 P2d 431 (1989). Thus, we turn to the question of whether defendant's consent was the result of coercion, express or implied.

██    Because defendant does not claim that any express coercion occurred, such as the use of threats or physical force, the issue is whether, considering the totality of the circumstances, the situation was impliedly coercive. We conclude that it was.

Defendant was stopped by a uniformed police officer in a marked car with overhead lights flashing. A second officer and police car soon arrived. Defendant was ordered to get out of the car and go to its rear. His knife, which he was legally carrying, was seized and kept for the duration of the stop. His driver's license was also kept throughout the stop. Although the police did not tell defendant that the search of his vehicle had disclosed an open alcohol container, we presume that

defendant was nonetheless aware of the fact, because the evidence indicates that he had attempted to hide the container when he was stopped. Defendant's passenger was handcuffed, frisked, arrested and removed to a police car. All of those events occurred before defendant responded to the question regarding what was in his pockets by emptying their contents on the truck bed. Under these circumstances it is highly probable that defendant simply felt that he had no choice but to comply with the search request. On those facts, the state failed to carry its burden to prove that defendant's consent was a product of his free will.

Because the state failed to show that the consent was voluntary, evidence obtained in the search of defendant and his vehicle must be suppressed. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.