Argued and submitted June 15, affirmed November 7, 1984, reconsideration denied January 25, petition for review allowed February 6, 1985 (298 Or 704)

STATE OF OREGON,
*Respondent,*

*v.*

GRANT SMITH,
*Appellant.*

(M3 44; CA A29648)

691 P2d 484

Thomas J. Crabtree, Bend, argued the cause and filed the brief for appellant.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for driving while under the influence of intoxicants. ORS 487.540. He contends that the trial court erred in denying his motion to suppress evidence of statements that he made to the police both before and after he was advised of his *Miranda* rights and in denying his motion to suppress evidence of his refusal to take a breath test. We affirm.

Sheriff's deputies received a report of an accident. When they arrived at the scene, they found a vehicle off the road. No one was in or near it. They saw a pair of crutches inside. The deputies asked their dispatcher to check the vehicle's registration. Minutes later, they saw defendant near a warehouse 150 yards away. He ran when he saw the deputies. They ordered him to stop. He tripped and fell. He was still on the ground when the deputies caught up with him. He told them that he had just had knee surgery, and he offered to show them his knee brace or scar. The deputies helped him to his feet, held him and took him back to their car. It was apparent that he had been drinking. Deputy Swearingen testified that he was not free to leave at that time.

After defendant had identified himself, the deputies began questioning him about the disabled vehicle. At first, he denied that he owned or had driven the vehicle. He then stated that he had been drinking with friends in the warehouse, but that he could not remember their names. After the deputies learned from their dispatcher that the vehicle was defendant's, he admitted that he owned it and that he had been driving it when it went off the road. Swearingen then arrested him and advised him of his *Miranda* rights.

Defendant was taken to the county jail for booking. When he asked to contact a specific attorney, he was incorrectly informed that that attorney was a deputy district attorney who could not represent him. In fact, there were two attorneys in the area, father and son, with the same name. One was a deputy district attorney; the other was in private practice. Defendant then attempted, without success, to contact a second attorney. He did not attempt to contact a third attorney. At that time, he was asked to take a breath test. He refused. After Swearingen told him the consequences of his refusal, he stated that he would not take the test until after he

had spoken to an attorney. Swearingen took that to be a second refusal.

Defendant contends that the trial court erred in refusing to supress evidence of statements he made to the arresting officers before he was advised of his *Miranda* rights. He relies on the Fifth Amendment to the United States Constitution, and Article I, section 12, of the Oregon Constitution, and *State v. Roberti,* 293 Or 236, 646 P2d 1341 (1982), *vacated and remanded sub nom Oregon v. Roberti,* 468 US ___ (1984). He argues that, from the time the deputies held him and took him back to their car, he was not free to leave, and that, therefore, he was "in custody" under *State v. Roberti, supra.*

In denying defendant's motion, the trial court stated, in relevant part:

"Well, I agree I guess you can read *Roberti* to require suppression in this case * * * since Mr. McCabe got Deputy Swearingen to say that [defendant] was not free to leave until they got through talking to him or some words to that effect. However [the district attorney makes] a pretty good point that * * * there really wasn't any reason to arrest him until they found out for sure which car it was that [he was] driving. Unless they found out after they got back to the police car and then about that time they arrested him and then someone gave him his *Miranda* rights. So, I'm going to rule that they gave him his *Miranda* rights * * * timely and that what he said before the *Miranda* rights was not while he was in custody in the sense of for any crime. They didn't know if there was a crime at that point. They suspected it, but didn't know. So they were conducting field interrogation and not trying to get evidence for a crime they already knew about * * * that they weren't sure that there was a crime at all."

We agree with the trial court's conclusion.

In *Berkemer v. McCarty,* 468 US ___, 104 S Ct ___, 82 L Ed 2d 317 (1984), a case that was decided after the trial here, the United States Supreme Court held that a motorist is not entitled to *Miranda* warnings unless he is "subjected to restraints comparable to those associated with formal arrest." 468 US at ___. In *State v. Hackworth,* 69 Or App 358, 361, 685 P2d 480 (1984), we stated:

"Thus, our inquiry in this case is not to determine when [the

arresting officer] formed the subjective intent to arrest defendant, but rather at what point a reasonable person in defendant's situation would have understood himself to be in custody or under restraints comparable to those associated with a formal arrest.

"* * * * *

"We thus consider whether, under the standards expressed in *McCarty,* defendant was entitled to *Miranda* warnings before he was formally arrested. This case involves an accident investigation rather than a traffic stop, and thus some of the factors for determining the 'atmosphere' vary from those the Court discussed in *McCarty.* Our conclusion is the same, however; the circumstances of this encounter did not trigger the requirement of *Miranda* warnings. First, defendant was not pulled over by the officer; he was already detained by the accident itself. [The arresting officer] testified that defendant would not have been free to leave until he had completed his accident investigation. Assuming a reasonable person in defendant's position would have been aware of that unarticulated intent, such detention—like the traffic stop in *McCarty*—does not rise to the level of the 'functional equivalent of formal arrest.' *Berkemer v. McCarty, supra,* 468 US ___,104 S Ct 3138, 82 L Ed 2d 317 (1984). Had defendant not been arrested, any restraint would have been temporary. A motorist questioned at an accident scene, especially when there is no serious injury, reasonably expects that he will have to answer some questions and have his license and registration checked and that shortly he or the officer will depart. Like the traffic stop discussed in *McCarty,* the accident investigation took place in public and involved an encounter with only one officer." (Footnote omitted.)

*See Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977); *Beckwith v. United States,* 425 US 341, 96 S Ct 1612, 48 L Ed 2d 1 (1976); *State v. Hervey,* 70 Or App 547, 689 P2d 13228,5 (1984); *State v. Gainer,* 70 Or App 199, 689 P2d 323 (1984).

■■ ˙ We conclude that defendant here was not "subjected to restraints comparable to those associated with formal arrest" until he was formally arrested. The deputies were investigating an accident. When they saw defendant, they did not know what relation, if any, he had with the disabled vehicle. Initially, there was no evidence that a crime had been committed and they had no reason to arrest him. Defendant

argues that he was in custody from the time that the deputies held him and took him back to their car. However, the totality of the circumstances do not support his conclusion. Defendant told the deputies that he had just had knee surgery. He was on rocky terrain and had fallen. He had been drinking. We conclude that the deputies were merely rendering him assistance. Neither is the fact that Swearingen testified defendant was not free to leave prior to being questioned controlling. Once it was established that defendant owned the disabled vehicle, it was reasonable to expect that he would be asked some questions. *See State v. Hackworth, supra.* If defendant had not been arrested, any restraint would have been temporary. The investigation took place in public. This was not the type of oppressive setting to which *Miranda* is directed. *See Berkemer v. McCarty, supra.* We find no violation of defendant's federal constitutional rights.

■ ■ We address defendant's state constitutional argument, *see State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), only to say that we perceive no principled basis, and defendant has presented us with none, to require earlier warnings under Article I, section 12, of the Oregon Constitution than those required under the federal constitution. *See State v. Scott,* 68 Or App 386, 389, 681 P2d 1188, *rev den* 297 Or 547 (1984); *see also State v. Lowry,* 295 Or 337, 351-53, 667 P2d 996 (1983) (Jones, J., specially concurring). The *Miranda* warnings given here satisfied Article 1, section 12, of the Oregon Constitution. *See State v. Sparklin,* 296 Or 85, 87-89, 672 P2d 1182 (1983). We find no error.

■ Defendant also contends that the trial court erred in denying his motion to suppress statements he made *after* he was advised of his *Miranda* rights. *See State v. Hibdon,* 57 Or App 509, 512, 645 P2d 580 (1982). Because we have already concluded that there was no police misconduct, we find no merit in his contention.

Defendant next contends that the trial court erred in admitting evidence of his refusal to take a breath test. He argues that he was denied his right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, section 11, of the Oregon Constitution. We conclude that defendant was not denied his right to counsel.

After defendant was taken to the county jail in Bend,

he asked to contact a specific attorney. He had selected that attorney's name from a telephone book, apparently at random. He was incorrectly informed by a deputy sheriff that that attorney was a deputy district attorney who could not represent him.[1] He then attempted, without success, to contact an attorney in Prineville. At that time he was asked to take a breath test. He refused. After the consequences of his refusal were explained, he stated that he would not take the test until after he had spoken to an attorney. However, he made no attempt to contact another attorney.

■ ■    The trial court stated in relevant part:

"[I]n the jail he said, yes he wanted to talk to an attorney and tried to. He got maybe a little bad advice from deputy McGilvrey who assumed he wanted to talk to Craig Coyner III, when in actual fact maybe he was trying to get to call Craig Coyner, Jr., or the second or whatever — he is the older. But there was no misleading intentionally. He did try to call a lawyer's number in Prineville but without success apparently.

"Then comes the question of the intoxilyzer. And, as I recall, he says 'no, sir, not until I talk to an attorney.' But at that point he'd already tried to call an attorney of his choice and when he failed to get in touch with anybody he apparently didn't ask for any other attorney or ask for any other phone calls. So it seems to me that his statement, 'No, not until I talk to an attorney,' is about like saying, 'No, I'm not going to do it, not tonight.' And I think that could be taken as a refusal."

The trial court expressly found that the deputy did not try to mislead defendant. The court's findings of fact are supported by the record, and we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). There is no causal connection between defendant's inability to contact an attorney and his second refusal. *See State v. Newton,* 291 Or 788, 809-10, 636 P2d 393 (1981); *State v. Cadmus,* 65 Or App 128, 130, 670 P2d 205 (1983). We agree with the court's conclusion. *See State v. Warner,* 284 Or 147, 158, 585 P2d 681 (1978).

■    Defendant does not argue that his right to counsel under the Oregon Constitution is different from his right under the federal constitution. Again, in this context, we

---

[1] There is no evidence in the record that defendant disagreed with or in any manner contested the deputy's assertion, as one might expect someone with an established lawyer-client relationship to do.

perceive no principled basis, and defendant has presented us with none, to interpret the state constitution differently from the interpretation given the federal constitution by federal courts.[2] *See State v. Scott, supra.* However, we have considered the issue under *both* constitutions and conclude that defendant has failed to show a denial of his constitutional right to counsel. We find no error.

Affirmed.

---

[2] This case does not involve the *scope* of a defendant's right to counsel. *See Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 109-110, 570 P2d 52 (1977); *Gaffey v. State,* 55 Or App 186, 189, 637 P2d 634 (1981).