Submitted on record and briefs June 29, affirmed August 24, reconsideration denied
October 14, petition for review denied November 1, 1988 (307 Or 101)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT BENTON,
*Appellant.*

(86-359-CR; CA A45151)

759 P2d 332

Gary D. Babcock, Public Defender, and John P. Daugirda, Deputy Public Defender, Salem, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem, filed the brief for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

GRABER, J.

## GRABER, J.

Defendant appeals his conviction for first degree manslaughter. He assigns as error the trial court's denial of his motion to suppress statements that he made to police officers during their investigation. We affirm.

Deputy Sheriff Hatcher responded to a reported homicide at a camp site. Before Hatcher reached the camp site, he saw defendant walking toward him, carrying the body of the victim, a four-year-old boy. Over the next seven days, before defendant was arrested, several police officers interviewed him, and he made numerous statements to them. He contends that 12 of those statements should have been suppressed, because they were made in violation of his *Miranda* rights and his rights under Article I, section 11, of the Oregon Constitution and because the statements were involuntary, in violation of the Fifth Amendment and of Article I, section 12, of the Oregon Constitution.[1]

We address defendant's arguments regarding two of the statements.[2] Seven days after the homicide, Officer Davis asked whether defendant would accompany him to Klamath Falls to take a polygraph examination. Defendant agreed. Before administering the polygraph, Officer Preston described the test to defendant. He told defendant that he had a "right to or not to take the polygraph examination" and that nobody could force him to take it. Preston further explained that defendant could stop the test at any time and was free to leave the room. Preston repeated defendant's *Miranda* rights, which had also been given earlier by other officers. Preston then administered the test. He testified that defendant never invoked his rights or asked to stop the test and, in fact, was "very cooperative."

After the examination, Preston took defendant into the District Attorney's office and told defendant that he had "failed" the test. Preston testified that the following exchange occurred:

---

[1] On appeal, defendant also claims that the statements were obtained in violation of Article I, section 9, of the Oregon Constitution, and of the Fourth Amendment. He did not present those arguments to the trial court, and for that reason we do not address them.

[2] Defendant's other arguments lack merit and do not require discussion.

"Q. [By defense attorney] What was [defendant's] reaction when you informed him that he failed the test? What was his demeanor, first of all, when you told him?

"A. [Preston] Well, he got — he was nervous and excited. I mean, you know, he didn't sit there calmly and accept it. I told him he was not being truthful with me, and so forth, and he said he didn't murder the boy, he wouldn't murder the boy and we got into a discussion, I told him I didn't feel that he took the kids — the young child's head and just bash it against a rock or a tree, or something like that. I think, I says, I think what's happening here is, you know, you're very deceptive, and you're not being honest with me, and I think it's just a case where you became angry with the boy and you threw him down, or knocked him down and he hit his head on a rock or a tree or something, I said.

"Q. So you were the first person to raise that issue under discussion? You said that before he brought up the issue of knocking the boy down or striking the boy?

"A. Yes.

"Q. What did he say when you [said], well, this is what I think happened?

"A. He said, you're right, I wasn't truthful. I wouldn't murder the boy, I wouldn't do something like that, he says, I got mad at him, you're right. I got mad at him and grabbed him by the arm and I flung him down and in doing so he stumbled and hit his head on a tree."

Preston told the District Attorney and Officers O'Donnell and Davis what defendant had told him. Armed with that information, O'Donnell and Davis interviewed defendant. He told them essentially what he had told Preston: He became angry and shoved the boy, who slipped and hit his head on a rock and died a short time later. The police then arrested defendant.

Defendant contends that the statements made in the course of the polygraph and shortly thereafter should have been suppressed, because they were involuntary. *See* US Const Amend V; Or Const Art I, § 12; ORS 136.425(1). He argues, in turn, that his agreement to take the test and his waiver of his right against self-incrimination with respect to it were involuntary for two reasons. First, he asserts, Preston suggested that the test results were admissible, and

"defendant was not advised that polygraph evidence is not

admissible, that he could not stipulate to its admissibility, and that he was being subjected to a scientifically unreliable and unduly prejudicial interrogation technique."[3]

■ The record fails to demonstrate that this use of the polygraph made defendant's statements involuntary. Assuming that the polygraph is "scientifically unreliable and unduly prejudicial," *see State v. Lyon*, 304 Or 221, 744 P2d 231 (1987), the police are free to use such an investigative technique so long as they neither violate any laws nor coerce a defendant. We reject the suggestion that the use of the polygraph *per se* makes a resulting statement involuntary. That polygraph evidence is inadmissible in court does not mean that defendant's statements were involuntary.[4] Defendant freely agreed to take the polygraph and to talk about its results. He was fully informed of his rights, and the police did not coerce him.[5] The statements were voluntary.

■ Defendant's second contention is that the psychological method of questioning him made his statements to Preston involuntary. Preston termed his interrogation technique "minimization." According to Preston, that technique involves minimizing the gravity of a suspect's acts or intentions in order to make the suspect more likely to discuss them. Thus, in this case, Preston said:

> "I told him I didn't feel that he took * * * the child's head and just bashed it against a rock or a tree, or something like that."

Defendant does not make any specific arguments about the minimization technique, but merely claims coercion in conclusory terms.

■ Psychological encouragement does not automatically equal coercion nor necessarily interfere with the exercise of free will. Here, Preston's interrogation offered no inducement, through either fear or promise, to defendant. *See* ORS 136.425(1); *State v. Mendacino*, 288 Or 231, 235, 603 P2d 1376

---

[3] Defendant does not argue that Preston incorrectly represented his "failure" of the examination.

[4] The analysis would be the same if, for example, the police had confronted defendant with inadmissible reports of a psychic's dream about the crime.

[5] Defendant relies in part on Judge Linde's concurrence in *State v. Lyon, supra,* 304 Or at 234, but we find nothing there that helps him.

(1980). Accordingly, use of the "minimization" technique was not improper.

Affirmed.