Argued and submitted December 1, 1987, the decisions of the trial court and Court of
Appeals are affirmed February 28, reconsideration denied April 4, 1989

STATE OF OREGON,
*Respondent on Review,*

*v.*

LONG HOANG VU,
*Petitioner on Review.*

(TC C8501-30114; CA A37716; SC S34120)

770 P2d 577

Lawrence Matasar, Portland, argued the cause for petitioner on review. With him on the petition was Hoffman, Matasar & Glaeser, Portland.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, J.

## CARSON, J.

This case concerns two issues, the admissibility of an allegedly compelled statement and the adequacy of a consent to a search. On the first issue, the trial judge, after suppressing the statement, ruled that the prosecution could use the statement for the limited purpose of impeaching defendant's testimony if defendant took the stand in his defense. On the second issue, the trial judge ruled that defendant voluntarily had consented to the search of his vehicle and admitted into evidence the crime weapon found in the vehicle. The Court of Appeals affirmed without opinion. *State v. Vu,* 84 Or App 562, 734 P2d 413 (1987).

The facts are as follows: Defendant came to this country in 1977. In the early morning hours of January 14, 1985, an argument erupted between four Vietnamese males (including defendant) and two Korean males outside a restaurant on S.W. Washington Street between Eleventh and Twelfth Streets, near downtown Portland. Defendant produced a handgun; it discharged a bullet, striking one of the Korean males in the head. Defendant left the scene in his vehicle.

Shortly thereafter, not far away, a Portland police officer stopped defendant's vehicle. The officer had seen defendant commit several traffic infractions. Just before making the stop, the officer had heard a police radio broadcast about the shooting. The officer approached defendant's vehicle and asked defendant for his driver's license. Defendant complied with the request, although he did have difficulty getting his license out of his wallet.

While the officer was standing beside the vehicle, he received additional radio information identifying the vehicle used in connection with the shooting and an Asian male as driver of the vehicle. This led the officer to believe that he might have stopped a suspect in the shooting. The officer asked defendant if he knew anything about "a problem" at S.W. Twelfth and Washington Streets. Defendant answered "No."[1] The officer then asked defendant to place his hands on

---

[1] It is unclear from the record precisely what defendant said in response to the officer's question. On occasion, the answer was phrased as an affirmative statement of lack of knowledge and on other occasions simply as "No."

the steering wheel, and defendant complied.[2]

The officer asked defendant for permission to search the vehicle. Defendant consented, but the officer had second thoughts about defendant's understanding of the request. The officer then explained to defendant that he did not have to consent, at which time defendant withdrew his consent.

During this initial encounter, the officer became aware that defendant had difficulty understanding English. Because of this concern, others with whom the officer was in communication requested that an interpreter be found for defendant. Later, after defendant was identified at the scene of the stop by witnesses to the shooting, the officer advised defendant of his constitutional rights. Defendant said that he did not understand, and the officer thereafter did not ask him questions. Defendant was taken to the police station.

When interrogation resumed some hours later at the police station, an interpreter was present. Defendant reviewed a consent-to-search form with the interpreter, signed it, and allowed the police to search his vehicle. The police discovered the crime weapon, which was used in evidence at the trial. Defendant was indicted for Murder. After a jury trial, he was convicted of Manslaughter in the First Degree.

Before trial, on motion of defendant, the trial judge suppressed defendant's negative response to the question about a problem at S.W. Twelfth and Washington Streets (the statement), ruling that it was made while defendant was "in custody" and that *"Miranda"* warnings should have been given to defendant before questioning. *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The judge prohibited the state from using the statement in its case-in-chief. The state has not challenged this ruling.

Defendant then sought a ruling prohibiting the use of the statement for any purpose. After finding that the statement was "voluntary," the judge ruled that the state could impeach defendant with the statement.

---

[2] The officer testified three times concerning when defendant was asked whether defendant knew anything about "a problem" at S.W. Twelfth and Washington Streets. The officer's testimony was inconsistent. He variously testified that defendant was asked the question either just before, at the same time as, or immediately after being commanded to place his hands on the steering wheel.

Defendant challenges the use of the statement at trial to impeach his testimony as a violation of Article I, section 12, of the Oregon Constitution.[3] In addition, he argues that his understanding of English is so limited that neither the statement nor his later consent to search can be considered constitutionally "voluntary." Defendant also contends that his lack of "cultural awareness" prevented him from realizing that he could decline the request for consent to search. He asserts that the interpreter was unskilled in English and did not aid his understanding of the consent form. Finally, defendant points to ORS 133.515, which requires that, before interrogation begins, an interpreter must be available to certain persons in certain circumstances.

## THE STATEMENT

Defendant's challenge to the use of the statement for impeachment rests upon a claimed statutory violation and constitutional violations both federal and state.

A.  *Violation of Interpreter Statutes.*

Defendant contends that, because the state failed to comply with the requirements of ORS 133.515 before eliciting the statement, the statement is inadmissible, even for the limited purpose of impeachment. ORS 133.515(1) provides:

> "Upon the arrest of a handicapped person and before interrogating or taking the statement of the handicapped person, the arresting peace officer * * * shall make available to the handicapped person, at the earliest possible time, a qualified interpreter to assist the handicapped person throughout the interrogation or taking of a statement."

ORS 133.515(3)(a) defines a "handicapped person" as a "person who cannot readily understand or communicate the English language, or cannot understand the proceedings or a charge made against the person." For the purpose of this discussion, we assume that defendant meets the statutory definition of a "handicapped person."

Defendant asserts that exclusion of evidence obtained in violation of ORS 133.515(1) is a personal right of defendant. He contends that the interests protected by the

---

[3] Article I, section 12, of the Oregon Constitution states: "No person shall * * * be compelled in any criminal prosecution to testify against himself."

statute are similar to those protected by, for example, the stop and frisk statute, a violation of which leads to suppression of evidence. *See State v. Davis,* 295 Or 227, 235-37, 666 P2d 802 (1983); *State v. Fairley,* 282 Or 689, 580 P2d 179 (1978); *State v. Valdez,* 277 Or 621, 561 P2d 1006 (1977). A violation of ORS 133.515(1) may warrant exclusion of evidence. We need not decide that question, however, because we conclude that the statute was not violated.

Although the statute requires that, before interrogating or taking the statement of a person, the police officer "shall make available" an interpreter and that the interpreter must be made available "at the earliest possible time," the statute only requires the assistance of an interpreter "upon the arrest" and "before interrogating or taking the statement." The legislature, in the same chapter of ORS, has defined "arrest" to mean placing a person under actual or constructive restraint or taking a person into custody for the purpose of charging that person with an offense. ORS 133.005(1). By statute, a "stop" is not an arrest, ORS 133.005(1), but a temporary restraint of a person's liberty justified by reasonable suspicion of the person's criminal activity. ORS 131.605(5) and 131.615(1).

Although the trial judge concluded that defendant was in custody (a warning threshold) at the time the question was asked, we conclude that defendant was not under arrest (the interpreter threshold) in the terms of the statute. The interpreter statute does not become operative until the handicapped person is arrested.

B. *Voluntariness of Statement.*

Apart from the officer's failure to provide the *Miranda* warnings discussed later, defendant contends that the lower tribunals erred in concluding that defendant's statement was voluntary in light of cultural disparities and his deficits in English language skills.

Even were we to characterize as an admission the answer defendant gave the officer about defendant's earlier whereabouts, there is nothing in the record to suggest that the statement was made under the influence of fear produced by threats or of promises or intimation of favor. *See* ORS 136.425(1); *State v. Foster,* 303 Or 518, 525, 739 P2d 1032

(1987). Likewise, we conclude that, in light of the surrounding circumstances, the statement was the product of an essentially free and unconstrained choice; defendant's will was not overborne and his capacity for self-determination was not critically impaired. *Schneckloth v. Bustamonte,* 412 US 218, 225-26, 93 S Ct 2041, 36 L Ed 2d 854 (1973).

On this aspect of the case (as opposed to the consent issue discussed later), defendant offers no basis for the claim that the statement was involuntary other than simply claiming cultural differences and lack of English language skills. Defendant does not contend that the cultural differences coerced him into making the false statement or that he misunderstood the question because of his poor language skills. Defendant, in fact, accurately complied with the spoken requests of the officer. At trial, defendant's reason for giving the false statement was not that he misunderstood the question but that he was "too scared." Whatever the cultural disparities and alleged deficits in the English language, defendant's statement was not involuntary.

C. *Failure to Give Miranda Warnings.*

### 1. Under the Oregon Constitution.

We allowed review in this case primarily to determine, under the Oregon Constitution, the admissibility for impeachment purposes of a defendant's statement once the statement had been suppressed because of a failure to give *Miranda* warnings. We do not reach that issue.

■ Whatever may have been the status of defendant at the time he responded to the officer's question, it did not rise to the level of custody requiring *Miranda* warnings. *See State v. Magee,* 304 Or 261, 744 P2d 250 (1987). Thus, the statement would have been admissible in the state's case-in-chief and, *a fortiori,* was admissible to impeach defendant.

### 2. Under the Federal Constitution.

■ Whether defendant was in that degree of custody to engage the federal requirement of *Miranda* warnings is unimportant in the circumstances of this case. Even assuming that the statement properly was suppressed, the statement can be used for purposes of impeachment. *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971).

## THE CONSENT TO SEARCH

■ Defendant argues that his consent to search his vehicle was not "knowingly" given.[4] Specifically, he asserts that, although an interpreter translated the consent-to-search form *verbatim,* defendant lacked understanding of the warrant process and the protections it is meant to afford. Defendant asserts that, as a foreigner from a nation where individuals had limited rights against the government, he needed a comprehensive explanation of the warrant process before he could consent voluntarily to a search without a warrant.

Both at a pretrial hearing on the motions to suppress and at trial, defendant offered testimony about a substantial cultural difference between people raised in this country and people raised in Vietnam. Although, in the abstract, the witnesses made a strong showing of differing cultural values or core beliefs that make a person more compliant with governmental authority or cause the creation of cultural barriers, defendant himself did not so assert either the cultural or the linguistic differences as a basis for his consent.

*State v. Warner,* 284 Or 147, 160, 585 P2d 681 (1978), requires that a consent to a search be voluntary, and the state has the burden to show that it is. The state's evidence showed that, at the time of his arrest, defendant consented to a search of the vehicle. The police officer was unsure of defendant's understanding of the request and explained that defendant was not required to consent. Defendant then refused to allow a search. At the police station, the police provided an interpreter for defendant. The interpreter translated both a consent-to-search form and a form acknowledging rights to a lawyer and to remain silent. The trial judge found that defendant received a *verbatim* translation of the contents of the forms. Defendant signed both forms, agreed to a search, refused to answer questions, and requested a lawyer. We agree with the trial judge's constitutional conclusion that defendant made a voluntary choice in respect of his rights.

---

[4] Defendant asks this court to adopt a "waiver" standard for consent-to-search review rather than a "voluntary" standard. *See State v. Flores,* 280 Or 273, 570 P2d 965 (1977) (majority and dissenting opinions). The trial judge concluded that defendant's consent to search "was voluntarily and knowingly and understandingly given." Because, on the facts of this case, the result would be the same under either standard, we decline defendant's invitation.

The decisions of the trial court and the Court of Appeals are affirmed.