Argued and submitted October 28, 1988, resubmitted In Banc October 11, 1989, affirmed January 17, reconsideration denied March 14, petition for review denied April 26, 1990 (309 Or 698)

# STATE OF OREGON,
*Respondent,*

*v.*

# WARREN COVEY BROWN,
*Appellant.*

## (10-86-07260; CA A46671)

785 P2d 790

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

Richardson, J., concurring.

Riggs, J., specially concurring.

Newman, J., dissenting.

**GRABER, J.**

Defendant appeals his conviction for manufacturing a controlled substance, ORS 475.992(1), and challenges the denial of a motion to suppress his statements and evidence seized from his vehicle. He argues that the statements and evidence resulted from an unlawful stop and that he did not receive necessary *Miranda* warnings. We affirm.

Lane County Sheriff's officers began surveillance of a heavily wooded section of BLM property after noticing several plots of marijuana plants during an aerial observation. No one came into the area during the first day and a half of surveillance. On the second day, defendant's truck came up the dead end gravel road and stopped. An officer hiding nearby saw defendant get out of the truck and enter the woods in the direction of the marijuana plants.[1]

Defendant emerged from the woods about an hour and 15 minutes later, went to his pickup, and then reentered the woods. The officer could see an implement hanging from defendant's belt that he described as "a pair of clippers or some other tool." Defendant returned to his truck approximately 45 minutes later and drove toward the highway. Officer Purdue, who was in a car with another officer and who had received radio reports from the hidden officer, stopped defendant's truck when it reentered the highway. Purdue told defendant that he wanted to discuss his activities in the area and to show him that a trailer hitch was partially blocking his truck's license plate. Both men walked to the rear of the truck to look at the hitch and the license plate.

Defendant handed his driver's license to Purdue on request. At about that time, Officer Jenkins arrived; he took defendant's license and ran a record check by radio. Purdue and the other officer left shortly after completing the record check, after which Jenkins was the only officer present. Jenkins told defendant about the surveillance of the marijuana plants and asked him if he would mind talking to him. Defendant said no, that he had nothing to hide and had done nothing wrong.

---

[1] Because the area was heavily wooded, the police had not located the marijuana precisely on the ground. However, they knew its general location in relation to the road.

At first, defendant responded that he was in the woods looking for animal tracks and had no knowledge of any marijuana plants. After further discussion, he told Jenkins that he had found the marijuana and had contemplated stealing it, but decided not to. Defendant ultimately admitted that the marijuana plants were his. Jenkins searched defendant's truck, with defendant's consent, and seized two machetes. Defendant was not arrested or given a citation but was allowed to leave.

The entire encounter lasted approximately 30 minutes. Defendant testified that he repeatedly asked Jenkins whether he was under arrest and that Jenkins told him that he was not. Part of the conversation took place at the rear of defendant's pickup, where he and the officer had gone to inspect the license plate. At some point, Jenkins asked defendant if they could continue the discussion in his vehicle, because he could not hear defendant over the road noise. Defendant agreed. Jenkins told him that "[b]ecause you are in my truck doesn't mean you're arrested." Jenkins testified that he returned defendant's driver's license some time during the conversation, but defendant testified that it was not returned until he was expressly allowed to leave.

Defendant was charged with manufacturing a controlled substance. He moved to suppress all the evidence and argued that the initial stop was unlawful, that the inquiry after the stop was unreasonable, and that his consent to search was not voluntary. The court denied the motion. Defendant was convicted by a jury.

■    On appeal, defendant challenges the denial of his motion to suppress. He first renews his challenge to the initial stop. ORS 131.615.[2] He argues that the officers lacked a

_____

[2] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

Although an automobile was involved, the stop was not based on a traffic violation and, therefore, was not governed by ORS 810.410(3)(b). *See State v. Goaid,* 68 Or App 904, 907, 683 P2d 129 (1984).

"reasonable suspicion"[3] that he had committed a crime. In determining whether the officer had a reasonable suspicion, we use an "objective test of observable facts." *State v. Valdez,* 277 Or 621, 629, 561 P2d 1006 (1977). Defendant was the only person seen during the two-day surveillance. He was in the vicinity of the plants for approximately two hours and carried a tool that looked like clippers. Those facts were sufficient to create a reasonable suspicion that he was cultivating the marijuana.

■    Defendant next contends that neither officer gave him *Miranda* warnings; therefore, the incriminating statements should be suppressed.[4] The state does not dispute the absence of *Miranda* warnings but contends that they were not required.

Defendant argues that *Miranda* warnings are required under Article I, section 12,[5] and that the Oregon Constitution provides him more protection than the federal constitution in this case. The Supreme Court has told us, although somewhat cryptically, that Article I, section 12, requires *Miranda* warnings; however, that provision did not require warnings here.

In *State v. Smith,* 301 Or 681, 725 P2d 894 (1986), the plurality opinion of the Supreme Court concluded that *Miranda* warnings are not necessary under the state constitution. A fourth judge concurred in the result, but concluded that warnings are warranted under Article I, section 12, when a defendant is in "full custody." 301 Or at 701-02 (Jones, J., concurring).

In *State v. Magee,* 304 Or 261, 744 P2d 250 (1987), the

---

[3] ORS 131.605(4) provides:

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

[4] Defendant also argues that the machetes should be suppressed, because their discovery was a product of the failure to provide *Miranda* warnings. However, even if warnings were required, a consent to search is not an incriminating statement subject to suppression for a *Miranda* violation. *State v. Baumeister,* 80 Or App 626, 628-29, 723 P2d 1049, *rev den* 302 Or 299 (1986).

[5] The pertinent part of Article I, section 12, provides:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

Supreme Court reversed the defendant's conviction, because he had not received *Miranda* warnings. After discussing some of the federal cases on the subject, the court said:

> "We need not decide the multifarious cases that arise in the state courts by matching their facts with those in the few cases decided by the United States Supreme Court. This is a needlessly speculative and ultimately wasteful exercise *at least when Oregon law furnishes an independent basis of decision.* * * * *It does so in this case.*" 304 Or at 266. (Emphasis supplied; citations omitted.)

The "independent basis of decision," in context, is Article I, section 12. Four judges joined the majority. Three concurring judges would have held that Article I, section 12, does not require warnings. 304 Or at 266-67 (Carson, J., concurring). The result in *Magee* makes no sense except as a rejection of the views of the plurality in *Smith.*

*State v. Vu,* 307 Or 419, 425, 770 P2d 577 (1989), cites *State v. Magee, supra,* as the only pertinent case under the heading: "Failure to Give Miranda Warnings * * * Under the Oregon Constitution." The court's brief discussion assumes that the Oregon Constitution requires warnings:

> "We allowed review in this case primarily to determine, under the Oregon Constitution, the admissibility for impeachment purposes of a defendant's statement *once the statement had been suppressed because of a failure to give Miranda warnings.* We do not reach that issue." 307 Or at 425. (Emphasis supplied.)

That passage confirms that Article I, section 12, requires warnings — under some circumstances.

Defendant asserts, and the dissent agrees, that *State v. Magee, supra,* provides a new standard for determining when the police are required by Article I, section 12, to give a person *Miranda* warnings before questioning: when the situation involves "compelling" conditions. He derives that argument from the Supreme Court's discussion of "full custody" in *Magee:*

> "We asked the parties to discuss the term 'full custody' as a concept that might be applicable to this case, and they helpfully did so. * * * The concept of 'full custody' is important and useful in the sense that it informs officers of a point at which no further question about the need to warn a detained person

arises; the term describes a sufficient but not a necessary condition. Its usefulness ends when it shifts attention away from the effect of questioning in another form or setting that judges would and officers should recognize to be 'compelling' to a debate whether the setting meets a judicial concept of 'full custody.' " 304 Or at 265.

However, the discussion about "compelling" conditions is *dictum,* because the court held that

"[w]hen this defendant was told by an officer investigating assault charges that he could not leave the police station because he was involved in the fight, this constituted 'custody' adequate to require a warning before questioning." 304 Or at 266.

The concurrence also recognized that the defendant was in custody within the meaning of the federal cases. 307 Or at 267 (Carson, J., concurring).

The last quoted passage did not establish a new standard for when the Oregon Constitution requires warnings. Read in context, the court was describing that "level of custody" which gives rise to warnings and explaining how it derived a requirement that the police give *Miranda* warnings to a person who is in custody from the words of Article I, section 12, which prohibits "compelled" testimony. However, the court's analysis still focused on whether the situation involved custodial interrogation in determining that the police should have given the defendant warnings before questioning him. *State v. Magee, supra,* 304 Or at 266.

The court later confirmed that *State v. Magee, supra,* did not eliminate the requirement of "custody." The opinion in *State v. Vu, supra,* assumes that warnings are required only when a defendant is subjected to custodial interrogation:

"Whatever may have been the status of defendant at the time he responded to the officer's question, *it did not rise to the level of custody requiring Miranda warnings.*" 307 Or at 425. (Emphasis supplied.)

We next must decide what the court meant by "the level of custody requiring *Miranda* warnings." *State v. Vu, supra,* 307 Or at 425. The court has described the concept of "full custody" this way:

"The concept obviously includes extended official detention in a cell or another enclosure, with or without booking or deprivation of personal belongings. But an enclosure is not essential; one would hardly dispute that a person handcuffed on the street or in his own home is in 'full custody.' " *State v. Magee, supra,* 304 Or at 265.

*See also State v. Smith, supra,* 301 Or at 702 (Jones, J., concurring). That view is similar to the test for determining when a person is in "custody" under federal law, which is

"whether 'a reasonable person in defendant's situation would have understood himself [under the totality of the circumstances] to be in custody or under restraints comparable to those associated with a formal arrest.' " *State v. Sadler,* 85 Or App 134, 735 P2d 1267, *modified on reconsideration* 86 Or App 152, 154, 738 P2d 601 (1987), *citing Berkemer v. McCarty,* 468 US 420, 441-42, 104 S Ct 3138, 82 L Ed 2d 317 (1984).

That test is a useful starting point for determining whether Article I, section 12, requires the police to give warnings in a particular situation.

The facts in *State v. Vu, supra,* and *State v. Magee, supra,* are also instructive. In *Vu,* after approaching the car and while checking the defendant's license, the officer "received additional radio information identifying the vehicle used in connection with [a] shooting and an Asian male as driver of the vehicle." 307 Or at 421. That information changed what had begun as an ordinary traffic stop into a stop based on the officer's reasonable suspicion that the defendant had committed a crime. He then asked the defendant if he knew anything about "a problem" at the scene of the shooting; the defendant answered, "No." 307 Or at 421. Immediately before or after asking that question, the officer told the defendant to place his hands on the steering wheel. 307 Or at 422 n 2. Notwithstanding the stop, the officer's reasonable suspicion that the defendant had committed a crime, and the question about the shooting, the court held that the defendant's status "did not rise to the level of custody" requiring warnings under Article I, section 12. 307 Or at 425.[6] In contrast, in *Magee,* the

---

[6] Similarly, federal courts have held that stops under *Terry v. Ohio,* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), do not give rise to *Miranda* requirements. *See, e.g., United States v. Quinn,* 815 F2d 153, 160 (1st Cir 1987); *see also Berkemer v. McCarty, supra,* 468 US at 439-40. A *Terry* stop occurs when an officer detains a person whom the officer reasonably suspects has committed, is committing, or is about to commit a crime. *Terry v. Ohio, supra,* 392 US at 30; *see* ORS 131.615.

defendant was at the police station and was told that he was not free to leave. Before being questioned, he was placed in a separate room and was told to take a seat. 304 Or at 263.

Here, up to three officers were present during the period that they detained defendant, the officers did not immediately return defendant's identification to him, the stop occurred at a remote location, and some of the questioning took place in an officer's truck. On the other hand, the stop occurred along a public road, defendant consented to continue the questioning in the officer's truck, only one officer was present during that questioning, the entire encounter lasted only about 30 minutes, the officers told defendant several times that he was not under arrest, and they never handcuffed him or suggested that he could not leave. In fact, the officer allowed defendant to leave after questioning him. The questioning was not so prolonged, pressured, or police-dominated as to become tantamount to an arrest.[7] Under the totality of the circumstances, a reasonable person in defendant's situation would not have understood himself to be in custody or under restraints comparable to those associated with formal arrest. Therefore, the officers did not violate Article I, section 12, by failing to give defendant *Miranda* warnings before questioning him.

Defendant makes a passing claim that warnings were required under the Fifth Amendment. Federal law requires *Miranda* warnings when a person is subjected to "custodial interrogation." Here, defendant was not in custody under federal standards. *Berkemer v. McCarty, supra; see also United States v. Quinn*, 815 F2d 153 (1st Cir 1987).

Affirmed.

**RICHARDSON, J.,** concurring.

I agree with the majority that defendant's statements and the evidence seized from his vehicle were not obtained in violation of his federal or state constitutional rights. I write

---

[7] ORS 131.615(2) recognizes that a stop based on reasonable suspicion permits "detention and inquiry" for "a reasonable time." ORS 133.005(1) defines "arrest" to mean "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense" and provides that a stop is not an arrest.

separately to discuss briefly the "Mirandization" of Article I, section 12.

The discussion revolves around *State v. Magee,* 304 Or 261, 744 P2d 250 (1987), and *State v. Smith,* 301 Or 681, 725 P2d 894 (1986). When this court decided *Smith,* 70 Or App 675, 691 P2d 484 (1984), we said:

> "We address defendant's state constitutional argument, *see State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), only to say that we perceive no principled basis, and defendant has presented us with none, to require earlier warnings under Article I, section 12, of the Oregon Constitution than those required under the federal constitution." 70 Or App at 680.

We proceeded on the assumption that *"Miranda"*-type warnings are required by Article I, section 12.

On review, the conflict was described somewhat differently in the Supreme Court by the lead opinion:

> "The question is whether Article I, section 12, of the Oregon Constitution requires that persons detained for questioning by law enforcement officers be given warnings similar to those required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966), under the federal Fifth Amendment. We hold that it does not." 301 Or at 683. (Footnotes omitted.)

The Chief Justice and five of the other six judges of the court participated in the decision. Three of the six participants concurred in the answer to the question posed in the opening paragraph of the lead opinion,[1] and three took the opposite view.

*Smith* involved only a skirmish in the battle now joined in this case. If the Oregon Constitution requires *"Miranda"*-type warnings, the next issue is at what stage of the contact between a person questioned and a police officer must the warnings be given. The majority, the dissent and the special concurring opinion of Riggs, J., identify *State v. Magee, supra,* as the decision resolving both issues.

---

[1] The lead opinion's ambitious description of the court's holding is not accurate. Four judges agreed that the defendant's conviction should be affirmed but the participating judges were equally divided as to the application of Article I, section 12.

One would have thought that, because of the uncertainty left by *State v. Smith, supra,* the Supreme Court, in *Magee,* would have firmly resolved the preliminary inquiry. The concurring opinion in *Magee* expresses the view that the issue was still alive. However, the court, in a rather casual unsigned opinion, extinguished the smoldering controversy with a simple recitation of what had and had not been decided in *Smith.* In any event, what emerges, at least after *State v. Vu,* 307 Or 419, 770 P2d 577 (1989), is that *"Miranda"*-type warnings are required under the Oregon Constitution.

In *Magee,* the court said:

> "The question is whether the officer questioned defendant under conditions that would lead defendant to feel 'compelled' to 'testify against himself,' Oregon Constitution, Article I, section 12, or to 'be a witness against himself,' United States Constitution, Amendment V, unless the officer first told defendant of the rights that safeguard him against such compulsion." 304 Or at 263.

The answer to that inquiry by the majority, again, is rather casual and imprecise. The cryptic analysis seems to reject such terms as "formal arrest," "full custody" and "custody" and replace them with a more elastic concept of "compelling circumstances." I, like the majority here, find momentary succor in *State v. Vu, supra,* and its phrase "level of custody," even though that phrase is only marginally more precise. Appellate courts, in some measure, devise rules for police officers, describing conditions under which they may collect evidence of crimes. The rules should fairly delineate the conditions from the perspective of the police officers who have to follow them. The three other opinions in this case fairly catalog the consternation of this court in trying to make a principled decision regarding Oregon law. Are we to tell law enforcement officers that a form of custody is the critical point or that, when the circumstances become compelling, advice must be given?

The lead opinion in the Supreme Court in *State v. Smith, supra,* as well as the dissent, recited the long judicial history of the present federal law of custodial interrogation. If Newman, J., and Riggs, J., are correct that "compelling circumstances" is the key analysis, we are beginning as torturous a trek under state law. I doubt that the Supreme Court

intended to launch an entirely new approach in a casual *per curiam* opinion.

Rossman and Deits, JJ., join in this concurring opinion.

**RIGGS, J.,** specially concurring.

I write separately because I agree with the dissent that *State v. Magee,* 304 Or 261, 744 P2d 250 (1987), requires our inquiry into whether the circumstances of a defendant's contact with the police prior to and during questioning involved "compelling" conditions that require *Miranda* warnings. That standard goes beyond the simpler analysis of whether a defendant is "detained," is in "custody," or is in "full custody," whatever those terms really mean. Agreeing with the dissent's author on that point and applying the standard of *Magee,* as I read it, I nevertheless disagree with the dissent's argument that this case must be reversed.

The majority opinion focuses on whether defendant was in "custody" or in some type of temporary and reasonable detention for purposes of police investigation. It concludes that the facts support the conclusion that the "questioning was not so prolonged, pressured, or police-dominated as to become tantamount to an arrest." I believe that the majority analysis focuses too heavily on the concept of custody. Under *Magee,* the truly relevant test is whether there are sufficient compelling circumstances, whether or not there was custody, to support a conclusion that warnings must have been given in order for the subsequent admissions and search and seizure to be untainted. In some situations, custody itself will create compelling circumstances. In other situations it could be possible for compelling circumstances to exist even if full custody was absent or not prolonged. It may be that the test of "compelling circumstances" is as slippery a concept and as difficult to define in a given case as any of the other tests that have been proffered from time to time in opinions under either Article I, section 12, or under the federal constitution. Nevertheless, it seems clearly to be a broader, more inclusive and a more correct standard under *Magee* than the custody test that the majority uses.

Notwithstanding my belief that the majority inappropriately focused on too narrow a test of "custody" rather

than on "compelling circumstances," I nevertheless agree with the majority that the facts in this record, discussed in the majority opinion, are sufficient to find both a lack of custody and a lack of compelling circumstances that would have required *Miranda* warnings. Therefore, defendant's subsequent admissions and the search and seizure were valid and the trial court is properly affirmed.

**NEWMAN, J.,** dissenting.

Although I agree with the majority that the initial stop was lawful, I disagree with its assertion that the police did not violate Article I, section 12, when they failed to give defendant *Miranda* warnings before they questioned him.

The majority correctly states that Article I, section 12, independently of the federal constitution, requires *Miranda* warnings and that *State v. Magee,* 304 Or 261, 744 P2d 250 (1987), is "a rejection of the views of the plurality in [*State v. Smith,* 301 Or 681, 725 P2d 894 (1986)]." 100 Or App at 210. The majority, however, misreads *Magee* when it asserts that Article I, section 12, does not require warnings here.

*Magee* requires warnings when the police question a suspect in circumstances that are "compelling." In *Magee,* the court stated:

> "We asked the parties to discuss the term 'full custody' as a concept that might be applicable to this case, and they helpfully did so. It is not a term of statutory or constitutional law, and we find it unnecessary to define it here. The concept obviously includes extended official detention in a cell or another enclosure, with or without booking or deprivation of personal belongings. But an enclosure is not essential; one would hardly dispute that a person handcuffed on the street or in his own home is in 'full custody.' The concept of 'full custody' is important and useful in the sense that it informs officers of a point at which no further question about the need to warn a detained person arises; *the term describes a sufficient but not a necessary condition. Its usefulness ends when it shifts attention away from the effect of questioning in another form or setting that judges would and officers should recognize to be 'compelling' to a debate whether the setting meets a judicial concept of 'full custody.'*" 304 Or at 265. (Emphasis supplied.)

Even if the suspect is not "in custody," the court must still

determine whether the effect of questioning is "compelling." As *Magee* states, "full custody" is a term that "describes a sufficient but not a necessary condition" to the requirement of warnings.

In *Magee,* the defendant went to the police station voluntarily to ascertain the status of his brother, who had been arrested after a fight with another person. The police told the defendant he was not free to leave, because he had been involved in the fight. They took him into a separate room and questioned him about the fight. They did not warn him, and he made incriminating statements. The court stated:

> "When this defendant was told by an officer investigating assault charges that he could not leave the police station because he was involved in the fight, this constituted 'custody' adequate to require a warning before questioning." *Magee, supra,* 304 Or at 266.

Although the court did *not* hold that the defendant was in "full custody," it held that he was subject to a degree of restraint that was "compelling" enough so that it "constituted 'custody' adequate to require a warning before questioning." 304 Or at 266. The majority should not dismiss the discussion in *Magee* of "compelling" circumstances as mere *dicta.* Otherwise, the court's statement that "full custody" is "a sufficient but not a necessary condition" would be meaningless.

Here, the trial court decided defendant's motion to suppress before the Supreme Court decided *Magee.* The trial court concluded that the police did not need to warn defendant, because he was not in "custody." It did not determine whether the circumstances in which the police interrogated him were "compelling."

The record discloses that the police had observed marijuana patches in a remote forest area and had stationed officers at a point on a dead end gravel road near the patches. They saw defendant park his car on the road and go into the forest in the direction of the patches, return to his pickup and then go again into the forest in the same direction with an implement hanging from his belt. Later, they saw defendant leave and followed him. They stopped him just as he left the gravel road and drove onto a connecting rural paved road.

The police then detained and interrogated defendant

for at least half an hour. Throughout, he was alone with the police. Only one other non-police car appeared—that of a county employee—during that time. Officer Jenkins asked defendant to sit in the police car. During at least a part of the interrogation, defendant sat in that car. Defendant first denied any involvement with the marijuana but then made incriminating admissions. Jenkins retained defendant's driver's license during at least a part of the interrogation, although he had already checked and cleared it. *See State v. Jackson,* 91 Or App 425, 755 P2d 732 (1988); *State v. Painter,* 296 Or 422, 425, 676 P2d 309 (1984). As long as Jenkins retained his license, defendant could not drive away and was not free to leave. Although the police told defendant that he was not under arrest, they did not tell him that he was free to leave. The effect of Jenkins' questioning in the police car, under the circumstances, was compelling if he did not return defendant's license to him before the questioning began.

The court did not find, and the record does not disclose, whether Jenkins continued to hold defendant's license and to detain and question him in the police car, when he made incriminating statements. The record shows enough, however, that the burden was on the state to show that, when defendant made the incriminating statements, Jenkins was not detaining him in the police car while keeping his license from him. It failed to make that showing. Accordingly, in the light of Article I, section 12, the court erred when it denied defendant's motion to suppress.

The state also had the burden to show that its failure to warn defendant did not taint his subsequent consent to search the car. *State v. Kennedy,* 290 Or 493, 501, 624 P2d 99 (1981); *State v. Anfield,* 95 Or App 567, 770 P2d 919 (1989); *State v. Ledbetter,* 95 Or App 187, 768 P2d 431 (1989). I would hold that the state did not carry that burden and that the fruit of that search—two machetes—was evidence that should also have been suppressed.

Joseph, C. J., and Buttler, J., join in this dissent.