Argued and submitted November 29, 1989, reversed and remanded for further proceedings May 16, 1990

# STATE OF OREGON,
*Respondent,*

*v.*

# JOHN WAYNE MASKELL,
*Appellant.*

(C86-04-31818, C88-10-37330, C88-11-37420;
CA A60625 (Control), A60626, A60627)

792 P2d 106

Lawrence J. Hall, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Acting Public Defender, Salem.

Robert Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

## WARREN, J.

Defendant appeals his conviction for arson, assigning as error the denial of his motion to suppress. He contends that his confessions were involuntary and that their admission at his trial violated Article I, section 12, of the Oregon Constitution and the Fifth Amendment of the United States Constitution.[1] We reverse and remand.

Detective Greisen visited defendant at his residence to inquire about a fire in the neighborhood. Defendant is mentally retarded. After Greisen read him the *Miranda* rights, defendant said that he had not been involved. Greisen asked him to take a polygraph examination. He agreed, and the next day he came to the station for the examination. He still insisted that he was innocent. Detective Miller, the examiner, told him that he did not have to take the test and that he was free to go anytime. He gave defendant a form explaining the *Miranda* rights and a polygraph examination consent form, but defendant testified at trial that he could not read them. Miller explained the examination procedure and basically how the polygraph worked. Then, Miller told defendant to put the form down, because he was going to give him "the best and shortest advice" that he had to offer. He testified that he advised defendant:

"If you honest-to-God did not set that fire, stick around, take this test, because I'm the guy that's going to go to the detective and say, this fellow's in the clear.

"I said, if you did set the fire, you don't have to tell me, you don't have to tell anybody, just stand up, say, I want a lawyer and walk out of the office, because if you lie to me, you're going to fail this test.

"I said, now I'll be quiet. If you're willing to take the test, I need your signature. If you're not willing to take the test, you stand up and walk out of here. Then I [*sic*] be quiet. And then he signed the form."

Defendant took the polygraph examination. Afterwards, Miller told him that the polygraph indicated that he had been deceptive. After some persuasion, he confessed that

---

[1] Defendant does not argue that the analysis under the Oregon Constitution differs from the analysis required by the United States Constitution. We think the result is the same under both constitutions.

he had started the fire. Greisen then took over the interrogation, and defendant confessed to him also.

■ The test for voluntariness is whether, under the totality of the circumstances, the confession resulted from an "essentially free and unconstrained choice" or if the defendant's will was overborne and his capacity for self-determination was critically impaired. *State v. Vu,* 307 Or 419, 425, 770 P2d 577 (1989). The use of a polygraph testing proceeding to encourage a confession does not *per se* make a resulting confession involuntary. *State v. Benton,* 92 Or App 685, 759 P2d 332, *rev den* 307 Or 101 (1988).

The trial court found that defendant understood the *Miranda* rights. When defendant asked the trial court to rule on voluntariness, the trial court stated:

> "[T]o me there's no question that Mr. Maskell voluntarily made the statements, and that aspect of the statements was part of my initial ruling, that they explained to him that he did not have to make any statements and that if he did they would be used against him."

The trial court apparently considered the statements voluntary, because no *Miranda* violation had occurred. It did not address the issue of whether, apart from any *Miranda* question, Miller's advice rendered defendant's decision to take the polygraph involuntary.

■ The advice, though probably well-intentioned, should not have been given. The admonition that if one is innocent, one should take the test, could be coercive if it were understood to mean that one had to take it to maintain his innocence. Similarly, the admonition that, if one is guilty, one should not take the test, could be coercive if understood as meaning that a refusal would be an admission of guilt. Because we cannot say that the advice was coercive as a matter of law, we remand to the trial court for findings on the existing record and conclusions based on those findings. Specifically, the court should make findings pertinent to whether the advice led defendant to believe that a refusal to take the polygraph examination would be an admission of guilt and rendered his admission involuntary.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**ROSSMAN, J.,** dissenting.

The majority's conclusion that this case must be remanded flies in the face of the trial court's findings. Accordingly, I dissent.

The proper scope of our review concerning the voluntariness of confessions is set forth in *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). As the majority correctly notes, we are not bound by the trial court's ultimate conclusion regarding voluntariness. We *are* bound, however, by its findings of historical fact, if they are supported by evidence. 250 Or at 488. Moreover, "[i]*f findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion, e.g., voluntariness or lack thereof.*" 250 Or at 487. (Emphasis supplied.) With its specific reference to voluntariness, the Supreme Court could not have answered the question in our case more directly. We are to find the facts in a manner consistent with the trial court's conclusion of voluntariness, if there is evidence to support such a reading. Said differently, we are bound by both its explicit and implicit findings.

In this case, the trial court explicitly found that defendant understood his rights and knew that his statements would be used against him in court.[1] Apparently, the majority

---

[1] The trial court found:

"Well, notwithstanding [defendant's] inability, insofar as his mental acuity, I don't think there's any question in this case that his rights were explained to him. *That even if he was incapable of actually reading the rights form he did understand his rights and he voluntarily waived his rights, knowing that any statements he made would be used in court or could be used in court.*

"I don't see any problems insofar as the testimony of Dr. True that [defendant] could not understand his rights if they were read to them. I think Dr. True's testimony went to the fact that he could not, in fact, read the rights, but that's not the primary question. It's whether or not [defendant] knew the rights after they were explained—them to him by the officers.

"It would be my ruling that all of the statements made to Greisen, Miller * * * would be admissible at the time of trial in this case.

"* * * * *

"[T]o me there's no question that [defendant] voluntarily made the statements, and that aspect of the statements was part of my initial ruling, that they explained to him that he did not have to make any statements and that if he did they would be used against him.

"I don't know if it's necessary for me to comment on the fact that initially [defendant] denied any involvement, to the point of giving a version of facts that would exclude him from being the perpetrator of the arson and then following the polygraph he gave a version that was consistent with the physical facts. So I don't see any problem with any of the statements made to the officers, insofar as their admissibility." (Emphasis supplied.)

does not challenge that finding.[2] Nevertheless, it decides that Miller's advice may have coerced defendant into taking the polygraph examination by giving him the impression that he would be admitting guilt if he did not. It concludes that the case must be remanded, because the court did not explicitly find that the advice was *not* coercive.

That ignores the rule in *Ball v. Gladden, supra.* Because the trial court made no explicit finding of fact regarding whether defendant was coerced by Miller's advice, we are obligated to presume that it decided that issue in a manner consistent with its ultimate conclusion of voluntariness. 250 Or at 487. Thus, the trial court implicitly found that Miller's advice did not impair his capacity to choose freely. Indeed, the only evidence suggesting that defendant did not understand that he could refuse to take the polygraph was his own testimony. In finding that defendant's confession was voluntary, the trial court implicitly disbelieved him. We are bound by that credibility determination. 250 Or at 487.

There is ample evidence to support the trial court's findings. Pursuant to Greisen's request, defendant came to the station to take the polygraph examination voluntarily. He was accompanied by his mother. Before explaining how he would proceed with the examination, Miller told him that he did not have to take it if he did not want to. Defendant said that he understood and had no questions. Later, Miller handed defendant a polygraph consent form and asked him to read the first paragraph and again told defendant that he had the right to get up and walk out. Defendant was still willing to take the test. Obviously, defendant had decided to take the test *before* Miller gave him the advice. Therefore, it could not have impaired his capacity to choose freely. The evidence justified the trial court's conclusion of voluntariness, and we should not disturb its determination.

---

[2] The evidence clearly supported that finding. During the initial inquiry at defendant's home, defendant silently read the *Miranda* rights, while Greisen read them to him aloud. Defendant then said that he understood his rights and signed the advice of rights form. Defendant had been investigated on a separate charge of arson two years before. At that time, he had also appeared to read along with the police as they read the rights and, when asked if he understood them, said that he did. At the station, Miller presented defendant with another advice of rights form. Defendant looked at the form for some time, remarked that it was like the one that he had seen the previous day and signed it, indicating that he understood the rights.

In short, there is no basis on which to conclude that defendant's will may have been overborne,[3] and there is no reason to remand for further findings. We are not free to override the trial court's factual determinations. I therefore dissent.

[3] As in *State v. Davis,* 98 Or App 752, 755, 780 P2d 807 (1989), *rev den* 309 Or 333 (1990), also involving the confession of a person of low intelligence, there is nothing in the record indicating that defendant was unaware of what was happening or was unable to comprehend the questions asked and to respond as he saw fit. Indeed, as the trial court noted, defendant lied to the police when first questioned about his involvement in the fires, suggesting that he did not feel compelled to cooperate with them.